Edward J. BOLLEN, Plaintiff,

v.

NATIONAL GUARD BUREAU, Defendant.

Edward J. BOLLEN, Plaintiff,

v.

Nicholas P. KAFKALAS, R. J. Posey, F. H. Smoker, Jr., Peter R. Phillipy, Richard L. Prave, Defendants.

Civ. A. Nos. 77–1458 and 77–1459.

United States District Court, W. D. Pennsylvania.

April 12, 1978.

As Amended April 13, 1978.

John R. Cook, Fine, Perlow, Stone, Pittsburgh, Pa., for plaintiff.

John M. Duff, Jr., Frederick R. Nene, Pittsburgh, Pa., John Panneton, Asst. U.S. Atty., Pittsburgh, Pa., for defendants.

## OPINION

COHILL, District Judge.

### Introduction

Plaintiff, Edward J. Bollen, is a colonel in the Pennsylvania Air National Guard ("Pa. ANG") as well as an Air National Guard technician. Air National Guard technicians are full-time federal civilian employees who are required by law to be members of the National Guard as a condition of their continued employment as technicians. 32 U.S.C. § 709(b) (Supp.1977).

Air National Guard colonels, as members of the Air Force Reserve, are generally retired after 30 years service. 10 U.S.C. § 8851(a). Plaintiff claims, however, that certain actions taken by the Secretary of the Air Force and the Adjutant General of Pennsylvania conferred on him a property right in his military employment until age

60 so long as he remained otherwise qualified. (Those actions will be more particularly described hereafter.) However, in 1974 a decision was made to have technicians such as plaintiff (i. e. Air National Guard colonels with technician service beginning before 1955) considered each year for selective retention by a vitalization board. Plaintiff argues that the vitalization board cannot lawfully take from him, without due process of law, his right to military employment.

The vitalization board considering plaintiff in 1977 recommended he not be retained, which recommendation was approved by the Adjutant General. Plaintiff was notified that because of the pending withdrawal of his federal recognition as a National Guard member, his employment as a technician would terminate.

As a result, plaintiff filed the instant actions on December 29, 1977, alleging that the actions of the National Guard Bureau and certain Pennsylvania Air National Guard officers (the "individual defendants") deprived him of a property interest in continued military employment and infringed upon his right to free speech. Plaintiff seeks equitable relief, damages, costs and attorney's fees. A temporary restraining order ("TRO") was issued on December 29, 1977, barring the National Guard Bureau from changing plaintiff's status. A motion to dismiss, or in the alternative for summary judgment, filed by the defendant National Guard Bureau and a motion to dismiss filed by the individual defendants were denied. After a hearing, the TRO was extended by entry of a preliminary injunction on January 6, 1978.

Because of the commonality of facts and nature of the proceedings, the cases were combined for trial and heard without a jury. At the conclusion of the hearing on the permanent injunction, the individual defendants' motion to dismiss the conspiracy claim predicated on 42 U.S.C. §§ 1985(3) and 1986 was granted. We concluded that plaintiff had not introduced at trial sufficient evidence of a conspiracy and that the alleged conspiracy did not involve class-based invidious discrimination. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Pursuant to Fed.R.Civ.P. 52, we make the following findings of fact and conclusions of law.

### Findings of Fact

Plaintiff, Edward J. Bollen, is a colonel in the Pennsylvania Air National Guard ("Pa. ANG") and is presently assigned in his military capacity as an Operations Staff Officer of the 112th Tactical Fighter Group stationed at the Greater Pittsburgh Airport. He is also a civilian employee of the Technician Program of the Pa. ANG. To retain his occupation as an Air National Guard Technician under 32 U.S.C. § 709, plaintiff is required to maintain his military status as a member of the National Guard. Plaintiff is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983.

The individual defendants, Nicholas P. Kafkalas, R. J. Posey, F. H. Smoker, Jr., Peter R. Phillipy, and Richard L. Prave, are all officers of the Pa. ANG and management officials of its Civilian Technician Program.

Defendant, National Guard Bureau ("NGB"), is an agency of the United States that is responsible for administering approved policies and programs of the Departments of the Army and the Air Force, publishing Army and Air National Guard Regulations, implementing such programs, and granting and withdrawing federal recognition of officers in each state including Pennsylvania.

The amount in controversy exceeds $10,000.00.

Plaintiff, now age 55, enlisted as an Aviation Cadet in the United States Army on August 22, 1942; entered active duty on March 3, 1943; and was commissioned a Second Lieutenant in the United States Army Air Corps on January 7, 1944. He was discharged from active service on September 21, 1947 and has been a member of the Pa. ANG continuously since April 22, 1949.

In the Air National Guard, plaintiff was promoted to captain in July, 1950; to major in July, 1954; to lieutenant colonel in July, 1960; and to colonel in September, 1964. He has in excess of 20 years' federal service and thus qualifies for retirement pay upon attaining age 60.

Each time plaintiff was promoted, the promotion was a unit vacancy promotion and not a promotion pursuant to the Reserve Officer Personnel Act of 1954 (ROPA). There are no mandatory promotions to colonel in the Air National Guard.

The plaintiff was hired as a Civil Service Civilian Technician of the Pa. ANG on December 1, 1951 and since then has been continuously so employed.

10 U.S.C. § 8851(a) (Supp.1977) requires that all Air National Guard colonels be separated from the Air Force Reserve after thirty years commissioned service or five years ingrade service, whichever is later. Until 1972, the National Guard Bureau interpreted the so-called "Grandfather Clause", § 527 of the ROPA, later incorporated into § 28 of Public Law 85–861 (see 10 U.S.C. § 8846, note) to mean that there was an exception to mandatory separation, based on total years of service, for Guard Technician Colonels who had been continuously employed prior to July 1, 1955 (the effective date of the ROPA), unless for cause, physical disability or having twice been passed over for promotion. The plaintiff relied on this interpretation in making employment, career and pension decisions.

On October 13, 1972, the Office of the Judge Advocate General, United States Air Force, issued an opinion interpreting the Grandfather Clause and concluded that only majors and below (those officers subject to mandatory promotion provisions) were protected from being "promoted out" of their civil service positions by reason of the mandatory promotion provisions of Chapter 837, Title 10 of the United States Code.

Because of this departure from the prior interpretation of the Grandfather Clause, on January 24, 1973, the Secretary of the Air Force delegated to the Chief, National Guard Bureau, discretionary authority, pursuant to 10 U.S.C. § 8851(c) (Supp.1977), to retain until age 60 in active status those Air National Guard officer air technicians who had been continuously employed prior to July 1, 1955. In this communication (see Plaintiff's Exhibit 4), in light of the previously-assumed authority for retention under the Grandfather Clause, the Secretary recommended that where the officer was fully qualified to hold his military position and properly performing his technician job, he should be retained in his technician employment.

The Senate Committee on Armed Services, in its report on the amendments to 10 U.S.C. § 8851(c), noted that the bill "contains a provision which will permit the Secretaries of the Army and the Air Force on a permissive basis to retain reserve officers who are technicians in an active military status until age 60, notwithstanding the operation of the Reserve Personnel Laws which would eliminate them because of promotion, pass over or length of service. The committee made this provision permissive with the result that all reserve technician officers could remain until age 60."

The NGB granted discretionary authority to the Adjutant General of Pennsylvania to retain plaintiff, among others, in active status until the age of 60. Such a policy was approved by the Secretary of the Air Force in accordance with 10 U.S.C. § 8851(c).

On February 7, 1973, a letter was forwarded to all Pa. ANG Units containing a study which listed separation dates of Air Technician officers (Plaintiff's Exhibit 28). This study indicated that officers assumed to be covered by the so-called Grandfather Clause would be authorized to be retained to age 60. An assumed mandatory separation date for plaintiff at age 60 was given as August, 1982.

The Chief of the NGB, Major General Francis S. Greenlief, on April 12, 1973, notified Major General Harry J. Mier, Jr., then the Adjutant General of Pennsylvania, that a list of individuals continuously employed since prior to July 1, 1955 would be provided and that those individuals were authoriz-

ed to be retained to age 60 (Plaintiff's Exhibit 4).

On May 9, 1973, General Mier concurred in the retention to age 60 of those individuals, one of whom was the plaintiff, Colonel Bollen (Plaintiff's Exhibit 4).

In December, 1967, an interim change to Air National Guard Regulation ("ANGR") 36–05 became effective (Plaintiff's Exhibit 37), directing that an annual vitalization board in each state review all officers upon completion of 20 years' qualifying service for retirement and instructing this board to make recommendations to the Adjutant General for retention or non-retention based upon an evaluation of the future benefits that could be expected to accrue to the Air National Guard from the continued service of each officer it considered. The Adjutant General was designated as the approving authority for such retention or non-retention. In Pennsylvania, the first annual vitalization board met in 1968, and plaintiff was reviewed annually thereafter along with all other eligible Air National Guard officers, including those assumed to be covered by the Grandfather Clause.

In August, 1968, the question was raised whether air technician officers allegedly protected by the Grandfather Clause were subject to ANGR 36–05 proceedings. The NGB declared that, notwithstanding the Grandfather Clause, all assigned officers were to be considered on an annual basis and that, to do otherwise, would seriously erode the viability of the total force and place the Air Technician officer in a protected status without regard to duty performance. The NGB further stated that during the month of September, 1968 the Grandfather Clause did not act to bar consideration or separation of Air Technician officers under ANGR 36–05 since all Air National Guard officers would be treated equally, irrespective of whether or not they are technicians (Defendants' Exhibit G).

ANGR 36–05, paragraph 13a(10) provides that "all officers with 20 years of Federal Service Qualifying for Retirement Pay . . . will be discharged unless specifically recommended for retention by an appropriate board in accordance with ANGR 36–06." Paragraph 3b of ANGR 36–05 states "Membership in the Air National Guard of the United States is not an inherent right of any individual. It is a privilege . . . .."

The Air National Guard Vitalization Program as provided under ANGR 36–05 was superseded January 23, 1976 by ANGR 36–06. The stated purpose of the annual review was to insure "a continuing program of vitalization of the Air National Guard . . . to avoid loss of combat readiness in a maturing force." It was further stated that:

". . . lack of promotion possibility and stagnation in the senior grades preclude providing for progression of qualified junior officers into positions of greater responsibility at the proper phase points of their careers. To accomplish this program of junior officer development, all Air National Guard officers and warrant officers with over 20 years of qualifying service for retirement will be reviewed for consideration of retention or separation." (Plaintiff's Exhibit 9.)

The criteria for officers being considered for retention is stated as follows in paragraph 3a of ANGR 36–06:

"Must have accrued 20 or more years of service required to qualify for retired pay at age 60 or before the date the board convenes. Officers previously selected for retention under any authority including those retained past mandatory removal date under the provisions of sections 8848(b), and 8848(c) and 8851(c) of Title 10, United States Code, will be included and again considered." (Plaintiff's Exhibit 10.)

In January, 1975, an opinion of the Chief Legal Adviser for the National Guard Bureau (Defendant's Exhibit C) addressed the authority that exists to retain in, or remove from, active status, such Air National Guard Officers in the grade of colonel employed as technicians since before July 1, 1955, the opinion stating that such officers do not have a mandated retention until age 60 because the Secretary of the Air Force can rescind or amend what he has promul-

gated. Plaintiff along with all other Pa. ANG officers with 20 years service and entitlement to retirement pay have been reviewed annually under ANGR 36–06.

In April of 1976, the plaintiff received an invitation to attend a dinner honoring Congressman Daniel Flood, which invitation he promptly declined. On May 1, 1976, General Peter Phillipy ordered plaintiff to attend the dinner. Plaintiff expressed his displeasure at being required to attend the meeting to various of the defendants but, as ordered, attended the dinner with General Phillipy. On September 9, 1976, plaintiff sent a letter to defendant Posey in which he revealed evidence that implicated the then Adjutant General, Harry Mier, in allegedly improper and illegal conduct. On September 10, 1976, prior to receipt of the letter in Annville, General Posey gave the plaintiff permission to attend the weekend drills at the Pittsburgh Unit. On September 13, 1976, General Posey received the plaintiff's letter concerning the Mier's situation; on the same date, plaintiff delivered a copy of the same letter to the defendant Phillipy. On September 15, 1976, the defendant Posey called and withdrew the previously given approval to attend the September drills at the Pittsburgh Unit and ordered the plaintiff to stop conducting investigations and staff visits; on the same date, the defendant Phillipy ordered the plaintiff to stop investigating and to stay out of all files. On September 16, 1976, General Mier posted a letter to the National Guard Bureau requesting the withdrawal of the plaintiff's federal recognition and his transfer to the Air Force Reserve. On the same date, defendant Phillipy ordered the plaintiff out of the Mission Commander's Office.

Because plaintiff was not selected for retention under the 1976 selective retention procedures, he brought an action in federal district court. This action resulted in a settlement of the case and a stipulated dismissal with prejudice. As part of the settlement, the parties agreed that plaintiff would be placed in a compatible military position with his technician status, that he would be continued in his technician status, and that federal recognition would not be withdrawn. This agreement was properly carried out by the parties.

The individual defendants have made efforts in the ensuing period to preclude the plaintiff from performing both his military and civilian technician functions. These actions include refusing to deliver to plaintiff mail directed to the Mission Commander, placing him in an office unsuitable to his rank, denying him customary and necessary staff support, excluding him from all meetings and management functions, and denying him mandated pay raises.

On August 15, 1977, the plaintiff was notified by the Adjutant General's Office that he would be considered under ANGR 36–06 for retention in the Pa. ANG.

In August, 1977, ANGR 36–06 was revised and advance copies, with a cover letter dated August 25, 1977 stating the advance copy was effective immediately, were sent to all states including Pennsylvania (Defendant's Exhibit E). The revised ANGR 36–06 (advance copy) was implemented to govern 1977 selective retention advisory boards and procedures. Revised ANGR 36–06 was subsequently printed with a stated effective date of October 7, 1977.

Paragraph 7 of ANGR 5–5 states "an 'Advance Copy' may be forwarded to the State adjutants general at the same time that the manuscript is processed for printing." Paragraph 8 of ANGR 5–5, however, provides that, where provisions of two publications conflict, the publication with the later date controls.

By communication from the Adjutant General's Office dated September 12, 1977, plaintiff was informed that he would be considered by a selective retention advisory board convening on or about October 5, 1977 pursuant to the provisions of revised ANGR 36–06 (Plaintiff's Exhibit 15). Plaintiff was advised he could submit a letter to the board inviting attention to any matter before the board. Plaintiff submitted to the selective retention advisory board a letter in support of his retention.

Under the 1977 selective retention process, which was taken pursuant to the revised ANGR 36–06, plaintiff's name was submitted to the National Guard for non-retention in the active Air National Guard. The Board of Officers convened under ANGR 36–06 considered a letter from the plaintiff, an impact statement offered by the defendant Prave and Officer Efficiency Reports ("O.E.R.'s"). Of the O.E.R.'s that the Board considered, all except those written after the beginning of the plaintiff's difficulties arising from the Mier investigation rated the plaintiff as extraordinarily qualified; of the three O.E.R.'s written after the beginning of his difficulty, one has been voided, one is under appeal, and the third, which is written by defendants Prave, Smoker and Posey, was unavailable to the defendant. (Plaintiff's Exhibits 30, 31 and 32.)

As a result of the 1977 selective retention process, plaintiff was notified that his federal recognition as an Air National Guard officer would be withdrawn pursuant to paragraph 11c of ANGR 36–06 and paragraph 13a(10) of ANGR 36–05. In addition, he was notified that because of the pending withdrawal of his federal recognition, his employment as a technician would be terminated. (Plaintiff's Exhibits 16, 17.)

Plaintiff at the present time is eligible to receive retirement compensation under the Pennsylvania State Employees Retirement System amounting to $15,120.00 annually. He will also be eligible for military retirement at the age of 60 in the amount of approximately $10,230.00.

### Conclusions of Law

■ Any actions performed by the individual defendants in their capacity as Pa. ANG officers were performed under "color of statutes, ordinances, regulation, custom, or usage" of the Commonwealth of Pennsylvania. *See Lasher v. Shafer*, 460 F.2d 343 (3d Cir. 1972); *Syrek v. Pennsylvania Air Nat'l Guard*, 371 F.Supp. 1349 (W.D.Pa. 1974), *rev'd on other grounds*, 537 F.2d 66 (3d Cir. 1976).

■ Plaintiff is a citizen of the United States within the meaning of 42 U.S.C. § 1983.

This court has jurisdiction under 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983 as to C.A. 77–1459 and under 28 U.S.C. § 1331 as to C.A. 77–1458. *See, e. g., Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).

■ Under the criteria set forth in *Mindes v. Seaman, supra,* at 201–02, this case is appropriate for judicial review. First, plaintiff has raised substantial claims of infringement of important due process and free speech constitutional rights. Second, the potential injury to plaintiff if review is refused is substantial, because it would result in the loss of both military and civilian positions having significant prestige and compensation benefits (it is unlikely that plaintiff at age 55 could secure substitute employment).

Third, the interference with military functions would be slight, because the court would only review whether the procedures used to select plaintiff for non-retention were constitutionally permissible. The court would not scrutinize whether military decisions as to the composition of the military forces were correct, nor would the court specify a particular position for plaintiff to hold. Fourth, the issues that plaintiff has raised do not involve specialized military expertise or discretion. The case requires only the interpretation of statutes and regulations and the application of basic constitutional principles to mostly undisputed facts. *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976), cited by the defendant National Guard Bureau, is not applicable here.

■ The "Grandfather Clause" (see 10 U.S.C. § 8846 note) did not convey to plaintiff a property interest in his military employment, because a colonel is not subject to mandatory promotion. Plaintiff has no reasonable expectation of continued employment based on the Grandfather Clause. *See generally Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548

(1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ Plaintiff, however, does have a property interest in continued military employment conferred on him on May 9, 1973 by the Adjutant General of Pennsylvania pursuant to the authority delegated to the Chief, National Guard Bureau on January 24, 1973 under 10 U.S.C. § 8851(c) (Supp. 1977). The specific language leading to this conclusion is found in the letter dated April 12, 1973 from Francis S. Greenlief, Chief, National Guard Bureau, which stated:

> "In order to clearly establish their [air technician officers employed prior to July 1, 1955] status, the National Guard Bureau proposes to forward a one time list to the Air Reserve Personnel Center with instructions that the personnel are authorized to be retained to age 60 provided the officer is fully qualified to hold his military position and properly performing his technician job."

(Plaintiff's Exhibit 4.) .We view as particularly significant that in the above sentence there are specified only two provisos to the retention authorized to age 60. Whether any distinction can be made between "retention" and "authorizing retention" is a question too subtle in light of the reasonable expectations of the affected technicians.

Defendants argue that such a conclusion conflicts with statutory provisions, but cite none and we are unaware of any.

Plaintiff's property interest in continued military employment is qualified, however. 32 U.S.C. § 709(e)(1), (2) and (3) provide for the separation of a technician for either not holding a compatible military grade or being separated from the National Guard, for failing to meet military security standards or for cause. None of these bases for separation have been applicable to plaintiff, however.

■ As the Supreme Court said in *Roth* and *Sindermann*, before a property right can be taken, due process must be afforded. Due process, of course, is an elastic concept, *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), but clearly a proceeding pursuant to ANGR 36–06 falls far short of that required. In the first place, ANGR does not test whether an officer being considered is properly performing his technician or military jobs (an officer cannot be considered by the Board unless he is physically qualified for worldwide assignment), but rather whether the officer being considered is vital to the continuity of the National Guard program. Secondly, the procedural safeguards afforded the subject of an ANGR 36–06 proceeding are patently inadequate, as counsel for the individual defendants conceded. Without deciding what procedures would be required for a fair hearing, we note that safeguards lacking include the opportunity to present evidence, the right to counsel, the right to call witnesses, the right to cross-examine witnesses, the right to be informed of the Board's decision, and the right to be furnished a transcription of the proceedings before the Board. We conclude, therefore, that to subject plaintiff to an ANGR 36–06 procedure would deprive him of property without due process of law.

Plaintiff points out that the ANGR 36–06 Board reviewing him proceeded under the advance copy of the regulation, which was not effective until October 7, 1977, the effective date of the printed copy. (See paragraphs 8 and 9 of ANGR 5–5, Plaintiff's Exhibit 11, which together provide that where publications have conflicting effective dates, the later date governs.) Plaintiff has not, however, directed our attention to any material difference between the two versions of the regulation, so we cannot perceive any harm to plaintiff from the Board's using the October 7, 1977 version.

■ Based on plaintiff's extensive testimony concerning defendant's actions, we have concluded in addition that defendants' actions were taken to punish plaintiff for the exercise of his first amendment rights. The defendants offered no evidence to the contrary.

Cases cited by the defendants are unpersuasive to the court in this case. All of them are distinguishable on their facts, in

light of the peculiar background of the case *sub judice.*

Accordingly, we order the entry of the accompanying permanent injunction.