

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 10, 1992

Major General William C. Wilson
Adjutant General
Texas Army National Guard
P. O. Box 5218
Austin, Texas 78763-5218

Opinion No. DM-148

Re: Authority of the Texas National Guard to obtain liability insurance with federal funds to cover National Guard officers and employees who operate a mobile shooting range for recruitment purposes (RQ-167)

Dear Major General Wilson:

You asked for the attorney general's opinion concerning whether the Texas National Guard is authorized to purchase liability insurance, with funds furnished by the federal government, to cover National Guard officers and employees who operate a mobile shooting range for recruitment purposes. We conclude that the Texas National Guard does have such authority.

You advise that this issue arises in the following context: The Texas Adjutant General's Department has three mobile pellet rifle ranges that are used by the adjutant general during National Guard recruiting activities; these mobile ranges are intended to give national guardsmen and potential recruits an opportunity to practice and demonstrate their marksmanship. The mobile ranges are installed in trailers and must be pulled by trucks. The adjutant general obtained liability insurance to cover the officers and employees of the adjutant general that operate the mobile rifle range. The insurance was placed with Essex Insurance Company, of Wilmington, Delaware, through a licensed Texas insurance agent. The premium for this insurance is $919.45 for the period from June 1, 1991, through June 1, 1992. The federal National Guard Bureau approved the purchase of the liability insurance and has paid the state of Texas $919.45 to obtain the liability insurance; this sum has been deposited with the Texas Comptroller of Public Accounts.

The adjutant general submitted a purchase voucher to the Comptroller of Public Accounts in July 1991, requesting that the comptroller issue a warrant for

$919.45 payable to the insurance agent to pay the premium. The comptroller advised the adjutant general that the voucher could not be paid because the adjutant general did not adequately demonstrate that he had authority to obtain the liability insurance. Because the insurer was not licensed to transact business in Texas, the comptroller also concluded that the insurer was not a "liability insurance company or companies authorized to transact business in the state of Texas [as required by article 6252-19a, V.T.C.S.]," and therefore the comptroller could not pay the voucher. As a result of the foregoing, the premium has not been paid.

A public officer may make only those contracts on behalf of the state that the officer is expressly or impliedly authorized by law to make. *Fort Worth Cavalry Club v. Sheppard*, 83 S.W.2d 660, 663 (Tex. 1935). Article III, section 44 of the Texas Constitution provides that an appropriation is valid if it is supported by pre-existing law. *See Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 929 (Tex. 1985); *Austin Nat'l Bank v. Sheppard*, 71 S.W.2d 242, 245 (Tex. 1934). Therefore, the voucher presented to the comptroller should be paid if: 1) the adjutant general had authority pursuant to pre-existing law to incur the type of obligation at issue, and 2) funds have been duly appropriated to pay the obligation. We conclude that both of these conditions have been met.

The National Guard has an "unusual 'hybrid' status as an agency with both federal and state characteristics." *Johnson v. Orr*, 780 F.2d 386, 388 (3d Cir. 1986) (citation omitted). The National Guard is the modern successor to the state militias recognized in article I, section 8 of the United States Constitution. *Jorden v. National Guard Bureau*, 799 F.2d 99, 101 (3d Cir. 1986). The state National Guard units are agencies under state control and authority. *Johnson v. Orr, id.* Pursuant to Texas law, the state of Texas has established a National Guard unit. *See* Gov't Code §§ 431.041-.045. The federal government provides state National Guard units with funds, subject to federal rules and regulations. *See* 32 U.S.C. §§ 106, 107. Through this funding and regulation process, the federal government maintains considerable control over the standards, organization, activities, and functions of the various state National Guard units. *See New Jersey Air Nat'l Guard v. Fed. Labor Rel. Author.*, 677 F.2d 276, 278 (3d Cir. 1982). The National Guard Bureau is a federal agency within the Departments of the Army and the Air Force with responsibility for maintaining liaison between the Departments of the Army and the Air Force and the various state National Guard units, as well as publishing National Guard regulations and implementing and administering approved National Guard policies and programs.

*See* 10 U.S.C. § 3040; *Bollen v. Nat'l Guard Bureau*, 449 F. Supp. 343, 345 (W.D. Pa. 1978).

The Texas Adjutant General is the head of the military department of the state and its military forces, including the Texas National Guard. Gov't Code § 431.022; *see also id.* § 431.001(3)-(4). The duties of the adjutant general include performing "for the state as near as practicable the duties that pertain to the chiefs of staff of the army and air force and the secretaries of the military services, under regulations and customs of the United States armed forces." *Id.* § 431.029(2). Federal law provides that the Secretaries of the Army and the Air Force are responsible for, and have the authority necessary to conduct, all the affairs of their respective departments, including recruiting, organizing, supplying, equipping, and training service persons within their respective departments. 10 U.S.C. §§ 3013(b)(1)-(5) (Secretary of the Army); 8012(b)(1)-(5) (Secretary of the Air Force); *see also* Attorney General Opinion JM-885 (1988). Therefore, the Texas Adjutant General enjoys the same authority and responsibilities with respect to the Texas National Guard. Gov't Code § 431.029(2). Federal law expressly authorizes the use of appropriated federal funds to pay the expenses of the National Guard Bureau, including the "acquisition, construction, maintenance, and equipment of shooting galleries." 32 U.S.C. §§ 106, 107(a)(6).

Pursuant to a Federal-State Agreement between the United States National Guard Bureau and the State of Texas, the State of Texas has agreed to conduct a National Guard recruiting and retention program in Texas financed by the federal government. The agreement provides that all approved costs in the implementation of this program shall be furnished by the federal government. In a National Guard Bureau directive dated August 21, 1986, the National Guard Bureau authorized state National Guard units to obtain liability insurance to cover personal injury and property damage resulting from the use of the mobile recruiting pellet rifle ranges. This directive also authorized payment or reimbursement to the states for the costs of obtaining such insurance. Pursuant to this directive, the Texas National Guard requested payment from the National Guard Bureau for obtaining such liability insurance. This request was approved by the National Guard Bureau in a memorandum dated June 27, 1991, and the state of Texas has been paid. On the basis of the Texas Government Code, the United States Code, the Federal-State Agreement, and the directive of the National Guard Bureau, we conclude that the Texas Adjutant General had authority to obtain the liability insurance to cover the National Guard officers and employees that operate the mobile recruiting pellet

rifle ranges. *See generally* Attorney General Opinion H-1186 (1978) (federal law may be the pre-existing legal basis for a state officer's authority).

Article V, section 22(1), of the current General Appropriations Act provides: "All funds received from the United States government by state agencies and institutions named in this Act are hereby appropriated to such agencies for the purposes for which the federal grant, allocation, aid, payment or reimbursement was made." H.B. 1, Acts 1991, 72d Leg., 1st C.S., ch. 19, at 365, 1022 of Aug. 30, 1991, Vernon's Sess. Law Serv. 365, 1022. Funds totalling ^919.45 have already been received from the federal government and deposited w th the comptroller for the purpose of paying for the liability insurance; pursuant to section 22(1) this sum is appropriated for paying for the liability insurance.

The comptroller also refused to pay the requested voucher because the insurer, Essex Insurance Company, is not licensed in Texas, and therefore the comptroller concluded that Essex was not authorized to transact business in Texas as required by article 6252-19a, V.T.C.S. Article 6252-19a authorizes the departments or agencies of the state to insure its officers and employees from liability arising from the use or operation of automobiles, trucks, tractors, power equipment, aircraft, or watercraft, but such insurance shall be provided by a "liability insurance company or companies authorized to transact business in the State of Texas." V.T.C.S. art. 6252-19a, § 1. This statute applies only to insurance obtained for liabilities arising from the use or operation of motor vehicles, power equipment, aircraft, or watercraft. *Id.* The mobile shooting range is not self-propelled, it does not meet any of the other article 6252-19a categories, and thus the statute does not apply.

### S U M M A R Y

The adjutant general, as chief of the Texas National Guard, has authority to obtain liability insurance, with federal funds, to cover National Guard officers and employees who operate a mobile shooting range for recruitment purposes. The funds to pay the insurance premium are appropriated by article V, section 22(1), of the current General Appropriations Act.

Article 6252-19a, V.T.C.S., which requires that the state obtain liability insurance from a company authorized to transact

business in Texas, applies only to liability insurance obtained to cover liabilities arising from the use or operation of motor vehicles, power equipment, aircraft, and watercraft, and thus is not applicable in this case.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Geoffrey Hennessey
Assistant Attorney General