**Russell G. JOHNSON, Plaintiff-Appellee,**

v.

**Thomas C. REED, Secretary, United States Air Force, and United States of America, Defendants-Appellants.**

No. 77–2570.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1980.

Captain Steven Miller, Dept. of the Air Force, Washington, D. C., for defendants-appellants.

Stayton M. Bonner, Wichita Falls, Tex., for plaintiff-appellee.

Before FAY, RUBIN and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

Russell Johnson contests his release from active duty after two Air Force selection boards passed him over for promotion. He claims that the Air Force included prejudicial material in his file and improperly dated his records. Although pursuant to Johnson's administrative challenges the Air Force partially corrected the file, it neither voided the second pass over nor prevented Johnson's release from duty. The district court found the Air Force's actions to be arbitrary and capricious and ordered relief for the plaintiff. We affirm the district court's judgment as modified.

## I. FACTS

Until the events engendering this suit occurred, Russell Johnson had an excellent record with the United States Air Force.[1]

---

1. Johnson joined the Air Force in the early 1960s. His early Officer Evaluation Reports (OERs) listed him as a very fine officer, one who should be promoted along with his contemporaries. His OER ratings improved so that from 1964 to June, 1974, he received the

He held the permanent rank of captain and the temporary rank of major. His assignments included a tour of duty in Vietnam and T–41 pilot training of cadets at the Air Force Academy. The Air Force selected Johnson to become a student in the Pilot Instructor Training (PIT) program for T–37 jet aircraft. One month after beginning PIT, a promotion selection board passed Johnson over for promotion.[2] Although he spent over five months in the course, Johnson did not meet the PIT standards in the prescribed time period, and therefore "washed out" of PIT. As is customary when a wash out occurs, Johnson was restricted from flying, and a Flying Evaluation Board (FEB) convened to review Johnson's record and to determine whether he should be permanently barred from flying.

The FEB found that because of factors over which only the Air Force had control, Johnson had an insufficient number of hours flying high performance jets to complete the course competently within the PIT time limits.[3] On November 18, 1974, the FEB removed Johnson's flying restriction. Two days later Johnson transferred to Sheppard Air Force Base, coming under the command of Colonel Billy Mobley. The Air Force, however, did not officially record Johnson's disenrollment from PIT until headquarters approved the FEB recommendation on February 3, 1975. The records, therefore, listed Johnson as having been in PIT until February 3, although he had left over two months before.

The document around which most of this litigation centers is a Training Report, Air

second highest possible overall ratings nine times ("outstanding, almost never equalled; consider for advancement ahead of contemporaries"), and the highest possible overall ratings three times ("absolutely superior; outstanding growth potential"). Johnson completed college and two training courses during this period. Additionally, he was decorated twice with the Distinguished Flying Cross.

2. Promotion selection board proceedings are traditionally shrouded in secrecy; therefore, no rationalization is given for this pass over. In similar cases, however, the Air Force has supplied statistics on the officer's closeness to the cutoff point for promotion. *See, e. g., Reid v. United States*, No. 446–74 (Ct.Cl. Sept. 28, 1979). This type of figures is not in the record of this case.

3. The original FEB finding was as follows:
Major Johnson, the Flying Evaluation Board has carefully considered all the evidence that you have asked us to review. We've examined the statements that you provided, and we have examined the OER's, and we have reviewed the testimony of the witnesses that appeared before the board. We found that you have been given ample opportunity to meet course standards. We find that your training continuity has been good. We believe that the background of flying experience, your background flying experience of 136 rated hours has not provided you with a sufficient experience level to allow you to meet course standards in the T–37 under the time restraints imposed by this course. You have previously demonstrated flying proficiency and the proper performing of instructor duties in the T–41 and successfully flying in a Southeast Asia tour in the O–2 aircraft.

We believe that you have demonstrated rated potential through your successful passing of your contact check and your instrument check in the T–37. Based on these facts, our recommendations are that you be DISENROLLED from this course of training and that you be reconsidered for reinstatement at a later date should your flying experience and background warrant.
In a later stipulation, the FEB stated:
The intent of the board, although not specifically addressed in the findings was that the suspension be removed. It was felt that Major Johnson did not have control over the factors presented. The board believed that he demonstrated rated potential in both aeronautical ratings as a pilot and navigator since the skills of navigator were not in question during this board action.
Colonel Rollston, the commander of program, concurred with the FEB findings except concerning later reinstatement. Rollston stated, "At his age, grade and experience level it would be economically and practically unreasonable to expect his flying background to improve sufficiently to qualify him as a professional instructor in either the T–37 or T–38."
Along with statements from Johnson and the PIT the FEB considered affidavits from officers with experience similar to Johnson's. These officers stated that they also had problems in PIT because of moving from slow, light aircraft to high performance jets. Shortly after Johnson was disenrolled, the Air Force changed the PIT syllabus to allow flight training to vary with the student's prior flight experience.
FEB records are not included in the selection folder; therefore, the promotion selection board did not have the benefit of these findings.

Force Form 475, which was filed on February 20, 1975, by Colonel Albert G. Boos, III, commander of Johnson's PIT course. This type of form is filed whenever a training course is taken. The form listed the training period as June 3, 1974, to February 3, 1975. The block for "course successfully completed" was marked "no." Under Part III, the comments section, Colonel Boos wrote:

> Major Russell G. Johnson has failed to complete this training due to lack of Instructor Adaptability/Flying Deficiency. His attitude toward the program has been excellent. His military bearing and behavior create a very favorable impression. He has been released from this course for reassignment.

Meanwhile, Major Johnson was performing excellently at his new assignment under Colonel Mobley. In mid-March, Colonel Mobley was about to be transferred, and he attempted to file an Officer Evaluation Report (OER) on Major Johnson. OERs are one of the most important forms in an officer's promotion file. By regulation, an officer must be under a commander's supervision for 120 days before an OER can be submitted, although the Air Force can waive the time limit. Air Force Reg. 36–10, Table 4–3, Rule 2. Because the closeout date on Major Johnson's Training Report was February 3, 1975, it appeared that Johnson had been under Mobley's supervision for only about thirty days; therefore, the Air Force administrators would not accept an OER on Johnson from Mobley. In reviewing the administrators' rejection of the proffered OER, the district court held that even if the closeout date had been changed to November 18, Johnson's last day of training, the requisite 120 days had not elapsed. No finding was made on whether the Air Force would have waived the 120-day requirement if the OER had reflected a 107-day period, rather than the briefer period resulting from the erroneous data. By letter, Mobley stated that if he had been allowed to file an OER, he would have given Johnson the highest rating in every category. Colonel Mobley did file a highly complimentary Letter of Evaluation. The

original opening date on the letter was February 4, 1975, because of the transfer date problems. These letters, however, are customarily attached to an OER before inclusion in a promotion folder. Since no OER was filed, this Letter of Evaluation was never viewed by a selection board.

On August 18, 1975, a second promotion selection board passed Johnson over for promotion. The top item in the promotion file was the Training Report filed by Colonel Boos. No OERs or Letters of Evaluation had been added. According to statute, failure to be recommended for promotion by two successive promotion selection boards causes release from active duty. 10 U.S.C. §§ 8299(h), 8303(d) (1976). Johnson was scheduled for release.

## II. ADMINISTRATIVE ACTIONS

Major Johnson believed that the language of the Training Report and the exclusion of an OER from Mobley caused his second nonselection for promotion. Specifically, he believed the notation "lack of Instructor Adaptability/Flying Deficiency" on the Training Report was highly prejudicial and did not accurately reflect the FEB's findings. He also felt that if headquarters had correctly recorded his transferral dates, Colonel Mobley would have been allowed to file an OER.

With these problems in mind, Johnson pondered the maze of administrative remedies. Ultimately, he desired to be retained in the Air Force. Retention required the voiding of the second selection board's action. Only the Air Force Board for the Correction of Military Records (Correction Board) has the power to void a pass over. The Correction Board, however, requires exhaustion of other administrative relief before it will consider an application. Air Force Reg. 31–3, § B, ¶ 8. Two other administrative bodies had the power to change the records within Johnson's promotion folder, so Johnson applied to these boards.

The Officer Personnel Records Review Board (OPRRB) considered Johnson's request to delete "lack of Instructor Adapt-

ability/Flying Deficiency" from the Training Report. Colonel Boos, its author, agreed that "Flying Deficiency . . . could be misinterpreted," but did not recommend deletion of "lack of Instructor Adaptability." The OPRRB deleted "Flying Deficiency" because of Colonel Boos's letter.

Johnson also applied to the Air Force Military Personnel Center (AFMPC) to change the closing date of the Training Report and the opening date of the Letter of Evaluation. The AFMPC agreed to change the opening date of Mobley's letter to November 20, 1974, but refused to change the closing date on the Training Report.

Following these mixed successes, Johnson's application for voiding the pass over was en route to the Correction Board. Two reports accompanied the application considered by the Correction Board. One was from Colonel Alva G. Branch, Deputy Director of Personnel Program Actions. Branch's memorandum focused on whether the Training Report, as corrected, accurately reflected Johnson's reasons for disenrollment from PIT. Branch recommended denying relief. The second letter was from Lt. Colonel Smith, Chief of the Officer Promotion and Appointment Branch, Directorate of Personnel Program Actions, who also recommended denial of Johnson's application. He felt the Training Report was not the sole cause of Johnson's pass over and that the corrected Training Report did not enhance the folder to such an extent that Johnson should be given the opportunity to be reviewed by another selection board. The Correction Board thereafter denied relief, stating Johnson had not "submitted sufficient evidence to establish a showing of probable error or injustice in the case." The ultimate result of Johnson's efforts was that although "Flying Deficiency" was deleted from his record and the date was changed on the Letter of Evaluation, no selection board ever saw the corrected promotion file or Colonel Mobley's letter.

On April 29, 1976, Johnson was released from active duty. He has since reenlisted as a sergeant and is serving at the Air Force Academy.

## III. DISPOSITION IN DISTRICT COURT

Johnson filed this action in district court requesting reinstatement, correction of his records, back pay and benefits, and a writ of mandamus to compel proper consideration by a promotion selection board. In its findings of fact and conclusions of law, the court stated, "Boos and the Air Force have conceded that the language [Flying Deficiency] was misleading." The court held that "lack of Instructor Adaptability" was not misleading, although in view of the FEB findings, a fuller explanation might have been fairer to Johnson. The court also held that absent a waiver Mobley would not have been able to file an OER because 120 days had not elapsed. The court concluded that the Air Force's refusal to change the closing date on the Training Report was arbitrary and capricious. Concerning "Flying Deficiency," the court stated the phrase "was incorrect and highly prejudicial to Johnson's chances of promotion: it characterized him as an incompetent pilot." The court specifically held that the selection board's consideration of the original file was not based on complete and correct promotion records, and therefore the Air Force violated a duty owed Johnson. The court found that the Correction Board's refusal to afford a reconsideration after Johnson's file had been corrected, particularly by the deletion of the prejudicial words, was arbitrary and capricious. The court voided the discharge, ordered reinstatement, granted $10,000 damages, required correction of Johnson's promotion folder, and limited the time before which a selection board could reconsider Johnson for promotion.

## IV. DOCTRINE OF NONREVIEWABILITY

The Air Force first attacks the district court's refusal to dismiss the cause of action under the doctrine of nonreviewability of administrative decisions. The standard for these dismissals was set out in

*Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971). *See also Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). In *Mindes,* this court began with the proposition that dismissals under the nonreviewability doctrine should be "utilized sparingly." 453 F.2d at 198. A two-step test was distilled from a range of precedents. The first step requires the trial court to determine whether plaintiff has exhausted administrative remedies and has alleged that the military has violated the Constitution, a statute, or its own regulations. *Id.* at 201. The Air Force concedes that this prong of the test has been satisfied. The second step requires the court to balance the sufficiency of the complaint's allegations against the policies contravening review. *Id.* at 201–02. This court suggested four factors to be balanced: the source and weight of the plaintiff's challenge, the injury to plaintiff if review were denied, the amount of interference with military matters if relief were granted, and the degree to which military expertise and discretion are involved. The Air Force claims the district court did not properly balance these factors.

■ After reviewing the factors, we cannot find that the district court erred. As to the first factor, Johnson alleged the Air Force violated a duty owed to him when it discharged him after consideration of incomplete and incorrect records. *See Yee v. United States,* 512 F.2d 1383, 206 Ct.Cl. 388 (1975); *Weiss v. United States,* 408 F.2d 416, 187 Ct.Cl. 1 (1969). He contended the military acted arbitrarily and capriciously in discharging him and in refusing to allow another selection board to consider the corrected records. On the second element, Johnson alleged that if review were denied, he would be injured by his release from active duty and his loss of rank and benefits. Concerning the third factor, some interference with military functions will always result from granting review. *See Mindes v. Seaman,* 453 F.2d at 201. Granting review here will not "seriously impede the military in the performance of vital duties." *Id.* The Air Force tries to posture Johnson's claim as one that will interfere with the very core of the military personnel

rating system. Reply Brief at 3. This situation, however, is not one in which an officer is asking a court to interfere with the discretionary rating given the officer's performance. The Air Force itself partially changed the Training Report. The question here is whether once the file is corrected, the officer should be afforded another review by a selection board. *Cf. Schlanger v. United States,* 586 F.2d 667, 671–72 (9th Cir. 1978), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979) (distinguishing the discretion and interference in review of orders of discharge from that in duty assignment decisions). The final factor to consider is the extent to which the administrative decision involved military expertise and discretion. While expertise and discretion may be involved, we cannot say the district court erred in failing to allow it to tip the scales in the Air Force's favor. We uphold the district court's refusal to apply the nonreviewability doctrine.

## V. THE CLOSING DATE

The Air Force attacks as clearly erroneous the district court's finding that the refusal to change the closing date on the Training Report was arbitrary and capricious. The Air Force also argues that the finding is "not only incorrect but immaterial." Brief of Appellant at 15. Appellant feels the finding is immaterial because the district court eventually held that absent an Air Force waiver, an OER could not have been filed regardless of whether the training period ended in November or February.

■ Air Force Regulation 36–10, ¶ 8–1d(2) states that for a final report, the "thru" or closing date is the "last day of training." *See also id.* ¶¶ 2–12, 7–1 (Form 475 covers periods of formal training). Johnson's last day of training was November 18, 1974, not February 3, 1975. Rather than apply the plain meaning of the words "last day of training," the Air Force puts forward a specialized definition for the phrase. It contends "that 'training' covers the period during which a trainee is administratively responsible to the commander's

discretion . . .." Brief of Appellant at 15. Aside from lack of proof that this interpretation is one consistently applied by the Air Force, Johnson was clearly under Colonel Mobley's discretion after November 20, 1974. We do not find error in the district court's determining that the Air Force acted arbitrarily and capriciously in its refusal to change the closing date on Major Johnson's Training Report.

We also note that the mere holding that an OER was not automatically permissible upon changing the closing date on the Training Report does not necessarily make the court's finding immaterial. The length of training reflected in the report may have affected the weight given the Training Report by the selection board. In addition, the closing date was the reason given by the Air Force for its refusal to exercise its discretion under Air Force Regulation 36–10, Table 4–3, Rule 2, to allow Colonel Mobley to file an OER even though 120 days had not passed. The district court did not, and probably could not, substitute its discretion in deciding whether to waive the 120-day requirement. The Air Force can decide whether, at this point, an OER from Mobley is proper after 107 days of supervision. The district court decision was not clearly erroneous.

## VI. VOIDING THE PASS OVER

The Air Force next asserts error in the district court's holding that the Correction Board was arbitrary and capricious in refusing to void the pass over and to afford Johnson reconsideration by a new selection board supplied with his corrected record.

This situation is not one in which the armed forces found no error in the officer's record. *See Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971), *after remand,* 501 F.2d 175 (5th Cir. 1974). *Cf. Reid v. United States,* No. 446–74 (Ct. Cl. Sept. 28, 1979); *Duggan v. United States,* No. 153–76 (Ct. Cl. Aug. 31, 1979) (OPRRB and Correction Board refused to void some contested OERs). The other administrative boards, to which the Correction Board requires application, agreed to partially expunge the

Training Report comment and to alter the transfer date on the Letter of Evaluation. Nor is this case one in which the Air Force has admitted error, the Correction Board has implemented a full remedy, and the officer has challenged the power of the Air Force to act. *Cf. Jones v. Alexander,* No. 77–2337, 609 F.2d 778 (5th Cir. 1980) (challenging Army's power to remedy defect in composition of selection board). The cornerstone of Johnson's case is that the Air Force did have the power to act and improperly failed to do so. In Johnson's action the administrative scions of the Air Force agreed that a cleaning of Johnson's selection folder was warranted, but they failed to permit that cleansing to have any effect on Johnson's career.

Johnson's case fits into a pattern of military pay cases evolving in the Court of Claims. The determination of whether the armed forces acted arbitrarily and capriciously is broken into two stages. The first stage covers the controversy over whether the administrative board should have expunged some part of the officer's promotion file. The statutes require the selection board to consider a record that fairly and equitably reflects the officer's career. 10 U.S.C. §§ 3442(c), 8442(c) (1976). For a promotion board's selection to be proper, it must have before it a substantially complete and fair record. *E. g., Weiss v. United States,* 408 F.2d 416, 187 Ct. Cl. 1 (1969). If the administrative body refuses to excise the contested portion, at trial the plaintiff must rebut with clear, cogent, and convincing evidence the presumption that the board acted legally. *E. g., Reid v. United States,* No. 446–74 (Ct. Cl. Sept. 28, 1979); *Skinner v. United States,* 594 F.2d 824 (Ct. Cl.1979); *Sanders v. United States,* 594 F.2d 804 (Ct. Cl.1979). *See Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971), *after remand,* 501 F.2d 175 (5th Cir. 1974). Johnson is not faced with this presumption because the Air Force itself, through the OPRRB, cleansed Johnson's record of the offending phrase. The second stage is reached once the contested portion of the selection file is removed. The question at

this stage is whether the Correction Board was arbitrary and capricious in failing to void a pass over by a selection board, since the selection board had improper information before it.

▄ In *Sanders v. United States,* and in this action, the Air Force has urged a "but for" test as the standard in this second stage for deciding whether the pass over should be voided. The Air Force would require the officer to prove that but for the existence of the now deleted information, the selection board would have recommended the plaintiff for promotion. The Court of Claims has rejected the "but for" test. *Sanders v. United States,* 594 F.2d at 817. Focusing on the language of the Correction Board's enabling statute, the Court of Claims noted that the board is charged with correcting *probable* errors or injustices; a but for test in effect would require proof beyond a reasonable doubt that the officer would have been promoted. The *Sanders* court rejected the test as an attempt to turn courts and correction boards into super-selection boards, deciding issues of promotability. *Id.* at 816. *See also Riley v. United States,* 608 F.2d 441 (Ct. Cl.1979). The court also suggested that if a but for test were adopted, the proper placing of the burden of proof would be on the defendant. 594 F.2d at 815–16. The defendant creates the uncertainty by improperly including information in the file; the defendant raises barriers to proof by keeping selection board proceedings secret and by routinely destroying its records. Further difficulties of proof are inherent in the selection board system: no two successive boards include the same members, the board applies a "whole person" standard that makes it difficult to ascertain what weight is given to any one document, and the increased competition within the armed forces gives the promotion system, as one judge put it, the aura of a lottery. *Id.* at 821 (Nichols, J., concurring). For these reasons the Court of Claims rejected the but for test.

The Court of Claims did, however, establish a standard for harmless error to avoid windfall recoveries. The court stated that under extraordinary circumstances "when the error or injustice was truly harmless, that is, when substantial evidence shows that it was unlikely that the officer would have been promoted in any event," the pass over should not be voided and the officer should not recover. *Id.* at 818. The court cautioned, however, that ~ this substantial evidence test should not be construed as a rewording of the stricter "but for" test.

The Court of Claims' logic is persuasive. Applying this framework to Johnson's case, we are not convinced that the district court was incorrect in holding that the Correction Board acted arbitrarily and capriciously in failing to void the pass over. The record does not reflect substantial evidence that it was unlikely that Johnson would have been promoted. Proof was not introduced to show whether Johnson was well below the cutoff point for promotion.[4] *Cf. Reid v. United States,* No. 446–74 (Ct. Cl. Sept. 28, 1979) (plaintiff was four points below promotion cutoff). This case is not one in which the officer's record is worsened by the removal of the contested item. *Cf. Reid v. United States,* No. 446–74 (Ct. Cl. Sept. 28, 1979); *Duggan v. United States,* No. 153–76 (Ct. Cl. Aug. 31, 1979) (voided OERs would have improved overall average or reflected recent improvement). Nor is this case one in which the Air Force Correction Board submitted Johnson's corrected folder to a Standby Advisory Board to reenact the original selection process and support its proposition that Johnson would not have been promoted. *Cf. Knehans v. Alexander,* 184 U.S.App.D.C 420, 566 F.2d 312 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978). (Standby Advisory Board utilized). The only statement in the record which supports the Air Force's position is that of Lt. Colonel Smith, but his memorandum seems to apply the "but for" test; it requires Johnson to show that the offending parts of the record "solely" account for his failure to be recommended

---

4. *See* note 2 *supra.*

for promotion.[5] Smith did not in any way substantiate his belief that the selection board results would not be any different. In addition, the inherent differences between successive selection boards, as noted above, cause a built-in variance that complicates proving the likelihood of promotion. The type of evidence needed to prove the likelihood is peculiarly within the reach of the Air force. The Air Force simply has not met its burden here. The district court could well have found the evidence in Johnson's favor to be persuasive. Few statements about a pilot could be more prejudicial than to declare that he cannot fly a plane.[6] When the top document in a selection file contains such a blot on the officer's record and is post-dated to cover approximately twice as much time as is customarily allowed for PIT, it is not hard to agree with the district court that the statement is prejudicial and that Johnson should have been afforded a fresh review of his corrected record.

■ The Air Force also asserts that the mere failing of the PIT course was enough to cause Johnson's nonselection for promotion. This argument is merely a reincarnation of the harmless error theory and the Air Force submitted no substantive evidence to show that this failure would cause a pass over. Actually, the Air Force's stress on its whole person concept, under which no individual document is the sole criterion for promotion, would seem to preclude this argument.[7]

5. As noted above, Lt. Colonel Smith's letter was one of the reports accompanying Johnson's application to the Correction Board. The following are the relevant portions of Smith's memorandum:

> .   .   .   .   .
>
> 4. In our judgment, when considering the total content of his selection folder we are confident that the contested Training Report did not solely account for his nonselection in CY 76, since no one factor is emphasized in evaluation under the whole person concept or determines selection/nonselection in promotion competition. We do not believe the report, as corrected, has significantly enhanced his selection folder, nor do we believe the results of the board would have been different had the board reviewed the corrected report. Competition to the permanent grade of major is very competitive and we believe his nonselection resulted because he did not meet other qualifications of the whole person concept upon which board members based their decisions, i. e. job performance, professional competence, professional military education, leadership, etc.
>
> 5. Applicant has not substantiated his contention of error or injustice and there have been no significant corrections made to his record since it was reviewed by the board. Board members had sufficient other information upon which to base their assessments and render a valid decision. In their judgment, other officers with whom he competed had stronger records and were found better qualified to assume the responsibilities of the higher grade.

Appendix at 31. The other report presented to the Correction Board, the one from Colonel Branch, dealt with the accuracy of the label "lack of Instructor Adaptability," not with the impact of the comments on Johnson's promotion.

6. The Air Force finds solace in the failure of any of its administrative officers to state specifically that the phrase "Flying Deficiency" was prejudicial or erroneous. The letter from Colonel Boos, however, admits that the phrase can be misinterpreted as meaning "below minimum Air Force standards." Appendix at 80. The FEB finding was that Johnson had an insufficient number of hours on jet aircraft, not that he was incompetent. See note 3 supra. No evidence was introduced to show that selection board members would ascribe a nonprejudicial meaning to this phrase. The statement by Colonel Boos was adopted by the OPRRB in its decision to remove the phrase from Johnson's Training Report. Appendix at 172. It seems reasonable to conclude, as the district court did, that the Air Force's removal of the phrase is objective evidence that the phrase was prejudicial.

7. See Air Force Reg. 36–10, ¶ 1–11. The Air Force emphasizes Johnson's accrual of one uncontested pass over. In a case involving the Army, it was shown that the chances for promotion the second time were 11.6% for majors and 19.4% for lieutenant colonels. Dilley v. Alexander, 195 U.S.App.D.C. 332, 342 n.21, 603 F.2d 914, 924 n.21 (D.C.Cir.1979). That court did not indicate whether statistics were provided on the factors causing promotion on the second review. In any event, comparable statistics were not submitted in this action. Furthermore, Congress requires two, not one, pass overs by selection boards with different members each time. 10 U.S.C. §§ 8297(b), 8299, 8303 (1976). If the Air Force based its decision on the first pass over it would circumvent these statutory requirements. Similarly, the Air Force focuses on the regulation that states that Training Reports, because of the variation in

■ The Air Force itself began grinding the remedial wheels when it partially corrected Johnson's selection folder. The Air Force acted arbitrarily and capriciously in failing to void the second pass over. The error was not harmless because the record does not reflect substantial evidence that it was unlikely that Johnson would be promoted. We affirm the district court.

## VII. MODIFICATION OF THE ORDER

In its order dated May 19, 1977, the district court directed that Johnson should not be reconsidered for promotion before 1979, and stated, "The court intends that sufficient time elapse for Johnson to receive another OER." Because enforcement of the judgment will not begin until 1980, the district court's order is modified to require the Air Force to suspend reconsideration of Johnson until another OER has been added to his selection folder.

### CONCLUSION

We affirm the district court's holding that the Correction Board acted arbitrarily and capriciously in failing to change the closing date on the Training Report and in refusing to void the promotion selection board pass over. The order is modified to account for the time that has elapsed pending this appeal.

AFFIRMED AS MODIFIED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

Respectfully, I must dissent from a decision that I consider to have been carefully and conscientiously made. While *Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971), *after remand* 501 F.2d 175 (5th Cir. 1974), determines when we may review air force personnel decisions, it does not explicitly set forth the standard to be applied once we undertake that review. I believe that the standard is whether the Air Force Board for Correction of Military Records acted arbitrarily or capriciously, *see Knehans v.*

*Alexander,* 184 U.S.App.D.C. 420, 566 F.2d 312 (D.C.Cir.1977), and my brethren appear to agree with this test. Our paths part, however, in its application: I find it easy to say that reasonable persons might conclude that the Air Force Board was wrong, but I cannot agree that they were so aberrant in decision or had so far departed from reason in their result as thus to stigmatize what they did. The Board may have erred but there was method in its approach and neither madness nor caprice in its decision.

The majority opinion, therefore, adopts what I agree is a correct standard, and even if it has been erroneously applied here, the result is no great tear in the fabric of the law. My brethren reinstate an officer who appears to have been a good one. But in essence application of what purports to be an arbitrary-or-capricious standard in this manner puts the district courts (and us, on review) in the position of evaluating the basis for promoting or passing over officers. We do not belong there; we lack the necessary expertise and we surely lack constitutional or statutory warrant.

---

training programs, should not be "equated" with other evaluation reports. Air Force Reg. 36–10, ¶ 7–1. Even if the report was not "equated" with others, we have no objective, substantive evidence on the impact and weight given the prejudicial statement.