**Larry J. WOODARD, Plaintiff-Appellant,**

v.

**John O. MARSH, Secretary of the Army, Defendant-Appellee.**

No. 80–2300
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit A

Sept. 15, 1981.

Rehearing Denied Oct. 27, 1981.

Hicks, Gillespie, James & Agee, P. C., Hal K. Gillespie, Dallas, Tex., for plaintiff-appellant.

John H. Hannah, Jr., U. S. Atty., Martha H. Clark, Asst. U. S. Atty., Tyler, Tex., Charles R. Fulbruge, III, Litigation Div., Washington, D. C., for defendant-appellee.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

REAVLEY, Circuit Judge:

Larry J. Woodard brought this suit seeking reinstatement of his officer's commission in the United States Army Reserve, recall to active duty, promotion credit, payment of back wages and benefits, and correction of the Army's records. The Army filed a pre-answer "motion to dismiss or, in the alternative, for summary judgment." Without explaining its reasons, the district court granted the Army's motion "in all things," and it entered judgment for the Army. Woodard appeals. Finding a proper legal basis for the district court's judgment, we affirm.

Having received an appointment as second lieutenant in the United States Army Reserve, Woodard began a two-year term of obligated service on October 1, 1977, by attending the Military Officer Basic Course at Fort Huachuca, Arizona. After he failed a required examination three times, however, he was referred to a "faculty board," a panel of officers appointed to consider the cases of officers who fail to meet academic standards. The faculty board recommended that Woodard be discharged. This recommendation was approved by the "appointing authority" (i. e., the Fort Commander), and Woodard was honorably discharged from the Army on July 14, 1978.

Woodard's subsequent application to the Army Board for the Correction of Military Records was unsuccessful. He has exhausted his administrative remedies.

In this suit, Woodard bases his claim for relief on three legal grounds: (1) that in discharging him, the Army failed to follow its own regulations;[1] (2) that the hearing he received violated his right to due process of law under the Fifth Amendment; and (3) that the Army's action deprived him of the equal protection of the laws, also guaranteed by the Fifth Amendment.[2]

The Army set forth three grounds to support its Rule 12(b) motion: (1) that the district court did not have subject matter jurisdiction; (2) that, even if the court had jurisdiction, Woodard's claims were not reviewable; (3) that the complaint did not state a claim upon which relief could be granted; and (4) that the Army was entitled to summary judgment as a matter of law and undisputed fact, see Fed.R.Civ.P. 12(b), 56. While the district court granted the Army's motion "in all things," there is

---

1. Complaint Counts One, Two and Four.

In his Amended Complaint, Woodard added Count Six, in which he alleged that the decisions of the various Army tribunals were "arbitrary, capricious, unsupported by substantial evidence, and erroneous in law." This language suggests that Woodard seeks review under the Administrative Procedure Act, see 5 U.S.C. § 706. It is unclear whether the federal courts have jurisdiction to set aside the Army's action purely on these grounds. The APA does not provide an independent basis of jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Plaintiff has cited no statutory basis for the direct review he seeks, and we have found none. We see no need to resolve the question here, however, since, as Woodard alleges in Count Four,

Army regulations themselves require faculty board decisions to be supported by substantial evidence and, by implication, to be reasonable. *See* USAICS Reg. No. 600–4, ¶ 3–8(d). Thus, for purposes of jurisdiction, we view Count Six, like Counts One, Two and Four, as alleging that the Army failed to follow its own regulations.

2. The due process clause of the Fifth Amendment has generally been held to make Fourteenth Amendment equal protection law applicable to the federal government. *See Rostker v. Goldberg*, —— U.S. ——, —— n.3, 101 S.Ct. 2646, 2650 n.3, 69 L.Ed.2d 478 (1981).

Woodard also attempts to rely on the Fourteenth Amendment and 42 U.S.C. § 1983. Since these are prohibitions on state action, Woodard's reliance is misplaced.

an obvious inconsistency in deciding that the court has no jurisdiction and in entering judgment, as the district court did, "on the merits." *See Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). Thus, in assessing the Army's arguments, we start at the beginning.

## I. *Jurisdiction*

In *Mindes v. Seaman*, 453 F.2d 197, 198 (5th Cir. 1971), this court stated broadly that the district courts have jurisdiction over suits alleging wrongful discharge from the armed services. The court did not identify the specific statutory grant under which the district court had jurisdiction in *Mindes*. Since it is the general rule, however, that the federal courts do not have jurisdiction absent a congressional grant, *see* L. Tribe, American Constitutional Law § 3–5, we read *Mindes* as simply rejecting the theory that the courts never have jurisdiction to hear military discharge claims. We must still identify an applicable jurisdictional grant.

█ The Mandamus Act, 28 U.S.C. § 1361, gives the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff." In *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.), *cert. denied*, 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980), we held that this statute confers jurisdiction over a suit for injunctive and declaratory relief from a discharge allegedly made in violation of Army regulations. This holding is directly applicable to Woodard's claim that the Army failed to follow its own regulations, and it applies with equal force to his allegations of failure to perform duties imposed by the Constitution. Thus, the district court had jurisdiction over Woodard's claims for declaratory and injunctive relief.

The court also had jurisdiction over Woodard's monetary claims. The Tucker Act gives the district courts original jurisdiction of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . . ." 28 U.S.C. § 1346(a)(2). In his amended complaint, Woodard waived all claims for damages in excess of $9,999.99. Therefore, the district court had jurisdiction of his monetary claims. *VanderMolen v. Stetson*, 571 F.2d 617, 619 n.2 (D.C.Cir.1977).

Since we find the Mandamus Act and the Tucker Act adequate bases for jurisdiction over this suit, we decline to pass on the other grounds of jurisdiction proffered by Woodard.[3]

## II. *Reviewability*

While we held in *Mindes v. Seaman* that the federal courts do not lack jurisdiction simply because an action challenges the personnel decisions of the military, *Mindes* makes it equally clear that a federal district court should not review every such decision, even if it has subject matter jurisdiction. *See* 453 F.2d at 199–202.

█ It is now well established that, despite *Mindes'* doctrine of "nonreviewability," claims that the Army failed to follow its own regulations or failed to afford procedural due process are reviewable. *See, e. g., White v. Callaway*, 501 F.2d 672, 674 (5th Cir. 1974) (failure to follow own regulations); *Sims v. Fox*, 505 F.2d 857 (5th Cir. 1974) (en banc) (by implication) (procedural due process), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). However, Woodard has cited no case, and we have found no Fifth Circuit case, which expressly considers either a claim of denial of equal protection in an Army personnel decision or the applicability of *Mindes* to such a claim. Therefore, we must decide whether the

---

**3.** Woodard also relies on 28 U.S.C. §§ 1331(a), 1343(4) (1976). We note that when Woodard filed his Amended Complaint waiving all monetary claims over $9,999.99, § 1331 still required an amount in controversy exceeding $10,000. *Compare* 28 U.S.C. § 1331(a) (1976) *with* 28 U.S.C.A. § 1331 (West Supp.1981). We also note that § 1343(4) required that the plaintiff be seeking relief under an "Act of Congress." Woodard fails to identify the Act of Congress on which we may predicate relief.

*Mindes* doctrine of nonreviewability precludes Woodard's equal protection claim.

In *Mindes*, we identified the policy considerations underlying the doctrine of nonreviewability: "an unwillingness to second-guess judgments requiring military expertise"; "a reluctance to substitute court orders for discretionary military decisions"; and "the proper concern that such review might stultify the military in the performance of its vital mission." 453 F.2d at 199. In determining whether a court should decline review in light of these policy considerations, we said that there were four factors the court should consider:

1. The nature and strength of the plaintiff's challenge to the military determination . . . . An obviously tenuous claim of any sort must be weighted in favor of declining review . . . .

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function . . . .

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters *such as promotions* . . . .

453 F.2d at 201–02 (emphasis added) (citation omitted).

■ We look first to the "nature" of Woodard's equal protection claim. Woodard alleges that, although there were three others who failed the same tests he did, two of these individuals were nevertheless retained as officers.[4] Thus, Woodard's equal protection claim is that there was no rational basis for distinguishing between him and these other officers. *See City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam) (distinctions among those permitted to continue livelihood as vendor need only "be rationally related to a legitimate state interest"); *Kotch v. Board of River Port Pilot Commissioners,* 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093 (1947) (upholding, under similar standard, an apprenticeship system which left incumbents with unfettered discretion to select relatives and friends).

■ As for the "strength" of his claim, we note that Woodard does not dispute that his failure to pass the test was an adequate basis for his discharge. Nor does he contend that the Army was required to discharge all trainees who failed the test he failed. To the contrary, he cites and relies on the Army regulation giving the faculty board and the appointing authority several discretionary options when they decide to relieve a student for academic reasons: "reassignment, administrative hold, return to parent unit, recycle to another class within the same course of instruction, or relief from active duty or active duty training." USAICS Reg. No. 600–4, ¶ 1–3(a). Obviously, if test failure were the only criterion to consider, there would be no need for a faculty board hearing and no basis for the board to recommend one option over another. Instead, the regulations provide that the faculty board "will consider and include in its findings all circumstances surrounding the failure, and the attitude, application and leadership potentialities of the officer." Army Reg. No. 635–100, ¶ 3–22(a)(2). The purpose of the faculty board hearing is to

---

4. The third, like Woodard, was discharged. It is not clear from Woodard's pleadings or from the record whether both of the retained officers failed *all* the tests he failed. His complaint ambiguously alleges that they "failed the same academic test(s)." For purposes of decision, however, we will assume that they failed the same tests the same number of times Woodard failed them.

Woodard's complaint also alleges that, since his discharge, passing standards have been lowered and students have been "passed" without successfully completing the same course Woodard failed. We think it frivolous for Woodard to argue that this allegation states the basis for an equal protection claim. The equal protection clause does not prevent the military or any other branch of government from changing its rules or standards, and it does not require the government to retroactively reassess cases properly disposed of under the old set of rules. Woodard cites no authority for his proposition, and we reject it.

allow the student to bring favorable evidence before the faculty board in order to allow the board to make a reasoned recommendation concerning his future as an officer. *See, e. g., id.*; USAICS Reg. No. 600–4, ¶ 3–6 (right to present character witnesses); *id.* ¶ 3–7(a) (right to "present any facts, evidence, or extenuating circumstances to the board"). Thus, the academic relief decision is a highly discretionary one, requiring the application of "military expertise" to a wide variety of individual and inherently subjective factors in each case. *See Mindes*, 453 F.2d at 198. From such factors, the military decision-makers are required to assess such intangibles as "leadership," "motivation," and "attitude." Army Reg. No. 635–100, ¶ 3–22(a)(3); USAICS Reg. 600–4, ¶ 1–3(c)(2)(4). In this case, Woodard would have the court determine whether there was any rational basis for the distinctions made, on the basis of such factors, between himself and the two students who were retained. We think that this is precisely the role that *Mindes* cautions the courts from taking.

The answer to this analysis is, of course, that since the Army may take such various factors into consideration, it should not be difficult for the Army to prove some rational basis for its decision. But the central question posed by *Mindes* is whether the Army *should* be required to satisfy a federal court on this score. This question is the concern behind the third factor in the *Mindes* test, "the type and degree of anticipated interference with the military function." 453 F.2d at 201. Woodard's claim would require the Army to submit to discovery concerning its many academic relief decisions and would require all the officers involved in Woodard's case to explain for the court their reasons for distinguishing between Woodard and the other two students. While we recognized in *Mindes* that "there will always be some interference when review is granted," and while we recognize now that the *degree* of interference

in this case might not be significantly greater than in other cases where we have accepted review, it is the "type ... of anticipated interference" which we believe may "be such as to seriously impede the military in the performance of its vital duties." 453 F.2d at 201. The possibility that a federal court may later require officers to explain the "rational basis" for distinguishing one trainee from another may deter military officers from relying on inherently subjective, though proper, criteria in favor of solely "objective" criteria that make it easier to demonstrate a "rational basis" when they get to court. The result could be the loss of good officers who fail tests and the promotion of officers who can pass tests but lack the ability to exercise command.

In *Johnson v. Reed*, 609 F.2d 784 (5th Cir. 1980), this court upheld a district court's decision to review the pass over and discharge of an Air Force officer on the grounds that the Air Force acted "arbitrarily and capriciously." The arbitrary action alleged in *Johnson*, however, was not the discharge decision itself but the consideration of patently incorrect records in making the decision. *Id.* at 787. The court noted that Johnson's case was "not one in which an officer is asking a court to interfere with the discretionary rating given the officer's performance." *Id.* at 789. Woodard's case is.

Our holding is a narrow one. We make no attempt to establish a general rule for equal protection claims questioning the rationality of military decisions.[5] As we noted in *Mindes*, "[c]onstitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal ...." 453 F.2d at 201. Each claim must be considered in light of the *Mindes* factors. We hold that Woodard's equal protection claim, alleging merely that there was no rational distinction between his case and those of other

---

5. We note that Woodard makes no claim that he was discriminated against because of his race, religion, sex, or any other such classification. Nor does he claim he was discharged for his exercise of a fundamental right. We of course express no view on the reviewability of such equal protection claims.

officers, is not reviewable.[6] Therefore, that claim was properly dismissed by the district court.

### III.   *The Merits* [7]

#### A.   *Failure to Follow Army Regulations*

Woodard alleges that the Army failed to follow its own regulations in three respects: (1) the faculty board and appointing officer considered irrelevant information in making their decisions; (2) the appointing officer, after disapproving four of the faculty board's sixteen findings, violated regulations by failing to send the case back to the board or to a new board for reconsideration; and (3) the decision to discharge Woodard was not based on substantial evidence. We consider these allegations in turn.

According to USAICS No. Reg. 600–4, ¶ 1–3(c),

> An academic relief occurs as a result of:
>
> (1) Failure to satisfy academic graduation criteria.

(2) Leadership deficiencies.

(3) Course related misconduct (e. g. cheating).

(4) Motivation/attitude—deliberate lack of interest and application on the part of the student.

When an officer is referred to a faculty board for an academic relief, Army regulations direct the board to "consider and include in its findings all circumstances surrounding the failure, and the attitude, application and leadership potentialities of the officer."   Army Reg. No. 635–100, ¶ 3–22(a)(2).   In deciding whether to approve or disapprove the faculty board's recommendation, the appointing authority "may consider *any* relevant information in making a decision."   Army Reg. No. 15–6, ¶ 2–3(a) (emphasis added).

Woodard argues that, under these regulations, six of the faculty board's sixteen findings were irrelevant.[8]   In its brief,

---

**6.**   To the extent that Count Six of Woodard's Amended Complaint—alleging that the Army's decision was "arbitrary, capricious" and "erroneous in law," *see* note 1 *supra*—may have also relied on the differing treatment given these officers, we hold that it is nonreviewable as well.

**7.**   Woodard makes several complaints about the evidence before the district court on summary judgment. First, he contends that the exhibits submitted by the Army were not certified as required by Fed.R.Civ.P. 56(e). The Army's motion, on the other hand, purports to be accompanied by certified copies of these exhibits, and the Army now makes the vague contention that certified copies were in fact "available to the district court." Brief for Appellee at 2 n.4. We see no need to resolve these conflicting claims, however, because there was absolutely no prejudice to Woodard if the certification requirement was not met. The Army's submissions consisted of its published regulations and the administrative record in Woodard's case. The regulations are not in any sense "facts" which are in dispute; they are the very law which Woodard relies on (and quotes extensively from) in alleging that the Army has failed to follow its own regulations. Woodard argues in effect that we must accept his interpretation of these regulations because the Army failed to certify its copies of them. These regulations are law, which this court can find for itself. As for the administrative record, Woodard does not in any way challenge its correctness or completeness. More important-

ly, the parts of the record on which we rely reflect facts that Woodard has conceded in his own complaint. While we do not take the requirements of Rule 56(e) lightly, neither do we interpret them to frustrate the "just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Woodard had full notice that the Army was asking the district court to convert the Rule 12(b)(6) motion into a motion for summary judgment, and he has no basis to claim prejudice from the court's consideration of the uncertified administrative record.

Woodard also complains that the Army filed late responses to two sets of interrogatories and that, therefore, "the matters of which an admission [wa]s requested [must] be deemed admitted." Fed.R.Civ.P. 36. The trial court had ample discretion to relieve the Army of its apparent default. *See French v. United States,* 416 F.2d 1149, 1152 (9th Cir. 1969); *cf. Hartley & Parker, Inc. v. Florida Beverage Corp.,* 348 F.2d 161, 163 (5th Cir. 1965) (late verification). The untimeliness here was a day in one instance, and a few days in the other.

**8.**   The six challenged findings read as follows:

7.   That 2LT Woodard was inducted into the US Army in January 1971 and was subsequently released approximately four months later in May 1971 for medical reasons;

8.   That according to 2LT Woodard's testimony the medical problem was administratively reviewed in 1973 by the De-

the Army concedes that four of the six were irrelevant, but it points out that these four were rejected by the appointing authority as unsupported by substantial evidence, so that they played no part in the appointing authority's decision to approve the recommendation.[9] The Army argues that the other two findings were relevant, and that the twelve relevant findings were amply sufficient to support the appointing authority's decision.

We agree with the Army's argument. The two findings at issue relate to Woodard's "nonfactual" statement, made when he was applying for his commission, that he had never previously been discharged from military service, and to his use of "profane and crude" language before the faculty board itself. We think that both of the findings were relevant to the issue of "leadership deficiencies," because, as the faculty board expressly stated with regard to the latter finding, the actions could "indicate[ ] a lack of good judgment and common sense." Woodard does not dispute either finding, and both appear indisputable from the evidence in the record. Moreover, the other relevant findings before the appoint-

ing authority stated that Woodard had failed to meet academic requirements and that his superior officers did not believe he had "the ability or potential to be an officer in the US Army." Woodard raises no serious contention that the twelve relevant findings were insufficient to justify the appointing authority's action.

Woodard nevertheless contends that, had the faculty board not considered the four irrelevant findings, it might not have recommended discharge. The appointing authority, however, is not bound by the recommendation of the faculty board. Army Reg. No. 15–6, ¶ 2–3(a); USAICS Reg. No. 600–4, ¶ 3–10(a). Thus, it is of no consequence whether the faculty board would have given a different recommendation had it not made the four irrelevant findings. It is empty to assert that the appointing authority, who himself disapproved the four findings at issue, did not give due regard to the fact that the faculty board's recommendation was based in part on these findings.

█ Woodard replies in his second argument, however, that the regulations in any

partment of the Army board. The review resulted in the decision that 2LT Woodard was medically fit for active duty;

9. That, in October 1973, 2LT Woodard enlisted in the US Army under a combat arms option. In March 1974, 2LT Woodard initiated action to be released from active duty due to nonfulfillment of his combat arms option contract by the US Army;

10. That a review of testimony and subsequent questioning of 2LT Woodard by members of the board revealed numerous inconsistencies, apparent contradictions and often vague responses. These characteristics displayed by 2LT Woodard causes [sic] doubt as to his ability to accurately report facts;

11. That testimony and records submitted as evidence indicated that in 1976 2LT Woodard, a then 25 year old individual with previous military experience coupled with experience in criminal law, was not factual in completing required military medical forms;

. . . . .

15. That 2LT Woodard's behavior before a board of field grade officers was charac-

terized by several uses of profane and crude language. The use of such language indicates a lack of common sense and good judgment since 2LT Woodard's legal counsel based a large portion of his case on the use of profane language by the DOT Faculty in formal faculty/student situations[.]

9. The Army's concession is ambiguous. It concedes only that findings 7–10, see note 8 supra, "were irrelevant to Woodard's academic deficiencies." Brief for Appellee at 40–41. It is unclear whether the Army would still contend that findings 7–10 were relevant to "leadership deficiencies" as a ground for academic relief. Moreover, elsewhere in its brief it contends that all the information considered and findings made by the faculty board were relevant. See, e. g., id. at 40 n.9. When the passage at pages 40–41 of its brief is read in its entirety, the Army seems to be stating that findings 7–10 were disapproved because they were irrelevant. This is incorrect; the findings were disapproved for lack of substantial evidence. Thus, it may be that the Army's concession was inadvertent. For present purposes, however, we will assume that the findings were irrelevant.

case required the appointing authority to send his case back to the same or to another faculty board. Woodard rests this argument on the regulation concerning the appointing authority's disapproval of board findings:

c. *Effect of errors. . . .*

(1) *Harmless errors.* If the appointing authority notes a harmless defect in the proceeding he may take his final action notwithstanding the defect.

(2) *Minor errors requiring correction.* If the investigating officer or board has failed to make a finding or recommendation required by the letter of appointment or a specific directive, or if there has been a minor procedural error or omission which may be corrected without prejudice to a respondent, the appointing authority *may* return the case to the same investigating officer or board for corrective action.

(3) *Substantial errors.* In case of a jurisdictional error (e. g., failure to meet essential requirements with regard to appointment or composition) or an error which has a material adverse effect on an individual's substantial rights, the appointing authority may not use the affected part of that investigation or board as the basis for adverse action against the person whose substantial rights were prejudiced. . . . If the error can be corrected without prejudice to a respondent, the appointing authority may do so, returning the case to the same investigating officer or board for corrective action, *if necessary.* In case of an error which cannot be corrected otherwise, the appointing authority *may* set aside the findings and recommendations and refer the case to a new investigating officer or board composed entirely of new voting members.

Army Reg. No. 15–6, ¶ 2–3(c) (emphasis added). Even if we assume *arguendo* that the four findings were "substantial errors" as that term is defined in the regulation, its provisions are permissive: they simply do not require the appointing authority to send a case back to a faculty board. The regulation requires only that the appointing authority "not use the affected part . . . as the basis for adverse action." The Army argues that, when the appointing authority disapproves erroneous findings but concludes that the remaining findings support his decision, he may exercise his usual power to make whatever disposition of the case he deems appropriate, *see* Army Reg. No. 15–6, ¶ 2–3(a); USAICS Reg. No. 600–4, ¶ 3–10(b), without sending the case back to a faculty board. We cannot say that the Army's interpretation of its regulations is arbitrary or capricious, *see Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Hodges v. Callaway*, 499 F.2d 417, 422 (5th Cir. 1974); we think it more consistent with the language of the regulations than Woodard's interpretation.

■ Finally, we consider Woodard's allegation that the Army's decision was not supported by substantial evidence. Army regulations permit the discharge of any officer who fails his officer basic course. Army Reg. No. 635–100, ¶ 3–20. It is undisputed that Woodard failed a required examination not once, but three times.

Thus, we conclude that there is no genuine issue of material fact concerning Woodard's claim that the Army failed to follow its own regulations. The district court properly granted summary judgment on this claim.

B. *The Procedural Due Process Claim*

■ Woodard claims that he was denied procedural due process because Army regulations do not require a verbatim transcript of faculty board proceedings. The regulations require only that a synopsis be prepared. USAICS Reg. 600–4, ¶ 3–7(b)(8).

In *Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974) (en banc), *cert. denied,* 421 U.S. 1011,

95 S.Ct. 2415, 44 L.Ed.2d 678 (1975), we held that the Air Force could honorably discharge a reserve officer without a due process hearing. Because 10 U.S.C. § 1162(a) provides that "reserve commissioned officers may be discharged at the pleasure of the President," we held that a reserve officer has no reasonable expectation of continued employment and thus no property interest protected by the due process clause. *Id.* at 861–62. We also held that Sims had no liberty interest in his reputation because his discharge was honorable and Air Force regulations required that the reasons for his discharge be kept confidential. *Id.* at 862–64.

Inexplicably, Woodard has neither cited *Sims* in his brief nor responded to the Army's reliance on *Sims* in his reply brief. The reason must be that there is no response. Woodard's commission is also subject to the terms of 10 U.S.C. § 1162(a); the Army is prohibited by statute from revealing the reasons for Woodard's discharge to outside persons. 5 U.S.C. § 552a(b); *see id.* § 552(b)(6).[10] Therefore, *Sims* controls this case.

In light of *Sims*, it is apparent that the Army has been more than fair in affording procedural protections to Woodard. On a charge of academic deficiencies, the Army gave Woodard notice, an adversary-type hearing, appointed counsel, and the opportunity to question all witnesses, respond to any evidence against him, and present evidence, character witnesses, and extenuating circumstances. *Cf. Sims v. Fox*, 492 F.2d 1088, 1094 (5th Cir.) (requiring only that officer discharged for *disciplinary* reasons be allowed to present his own case, and expressly declining to require right to counsel), *vacated en banc*, 505 F.2d 857 (5th Cir. 1974), *cert. denied*, 421 U.S. 1011, 95 S.Ct.

2415, 44 L.Ed.2d 678 (1975). *See also Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (when the state dismisses a student from medical school for *academic* reasons, it need not grant an adversary-type hearing). Woodard does not claim any specific prejudice from the failure to prepare a verbatim transcript; he does not claim that the synopsis prepared was in any way inaccurate or imbalanced. In sum, Woodard makes no serious contention that the procedures adopted by the Army were in any way unfair. *See generally Ka Fung Chan v. Immigration & Naturalization Service*, 634 F.2d 248, 258 (5th Cir. 1981) ("proof of a denial of due process in an administrative proceeding requires a showing of substantial prejudice").

Thus, Woodard has failed to state a claim of denial of procedural due process. The district court correctly dismissed this claim on the merits.

The judgment of the district court is AFFIRMED.

---

10. Woodard apparently concedes that the Army will not release the reasons for his discharge, but he nevertheless contends that he has a liberty interest in his reputation because he will be hard-pressed to explain to prospective employers why he served only eight months of a two-year commitment. *See* Appellant's Reply Brief at 8–9. While we appreciate Woodard's difficulty, we do not think that Woodard's need to give personal explanations of his academic discharge is a greater infringement on liberty that Sims' need to give explanations of his discharge for indecent exposure. *See Sims*, 505 F.2d at 864 (no infringement of liberty unless *government* perpetuates untrue charges).