**Charles Robert RUCKER,**
**Plaintiff-Appellant,**

v.

**SECRETARY OF THE ARMY,**
**Defendant-Appellee.**

No. 81–7216.

United States Court of Appeals, Eleventh Circuit.

April 15, 1983.

Ralph Strawn, Birmingham Area Legal Services, Birmingham, Ala., for plaintiff-appellant.

Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., Steven M. Post, Captain, JAGC, Military Personnel Branch, Litigation Division, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., for defendant-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Charles Robert Rucker (Rucker) brought this action in the United States District Court for the Northern District of Alabama seeking a judgment declaring that the voidance of his enlistment in the Army is invalid and a writ of mandamus compelling the Secretary of the Army (Army) to issue him an honorable discharge and award him back pay. The district court granted summary judgment for the Secretary of the Army and Rucker appeals to this court. For the reasons set forth below, we affirm in part, vacate in part, and remand to the district court for further proceedings.

I. FACTS:

Charles Robert Rucker first enlisted in the United States Army on July 11, 1958, at the age of 17. Rucker served on active duty until he was discharged for unsuitability on August 17, 1962, under the provisions of Army Regulation No. (AR) 635–209.[1] During this initial period of enlistment, Rucker demonstrated his inability to adjust to the demands of military life by losing all but two years, eleven months, and twenty-four days of service time due to, *inter alia,* being absent without leave or confined on eight different occasions. These events culminated in Rucker being discharged under

---

1. This regulation establishes policy and provides procedures and guidelines for eliminating enlisted personnel who are found to be unfit or unsuitable for further military service. An individual may be separated by reason of unsuit-ability due to, *inter alia,* lack of general adaptability, inability to learn, and defective attitudes.

All regulations cited herein are those in force on the date of Rucker's second separation from the Army.

honorable conditions and receiving a general discharge certificate.[2]

On October 5, 1973, Rucker reenlisted in the Army under the name of Jean Douglas Jaysura, apparently to conceal his prior service and discharge for unsuitability. Rucker indicated on his enlistment contract he had no prior service. According to AR 601–210, in effect at the time of his second enlistment, an individual who has previously been discharged for unsuitability is prohibited from reenlisting unless he receives a waiver of the disqualification after a two-year period has expired since the prior discharge. Rucker did not receive the required waiver.[3]

During the second enlistment, Rucker experienced similar problems to those that culminated in his initial discharge. Rucker had five periods of unauthorized absences and one instance of failing to report for duty. These acts of misconduct resulted in nonjudicial punishment under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1975), ranging from forfeiture of pay to extra duty assignments. Two of the unauthorized absences did not result in punishment. The last period of unauthorized absence began on June 16, 1975, and continued until Rucker was apprehended in Gadsden, Alabama, on November 13, 1975, on suspicion of interstate transportation of a stolen motor vehicle. After Rucker was convicted and sentenced to two years confinement for receiving stolen property, he was transferred to the Federal Corrections Institute in Texarkana, Texas.

During his incarceration, a detainer was maintained on Rucker by military authorities.[4] Shortly thereafter, the Army initiated separation proceedings under AR 635–206. This regulation provides for the discharge of soldiers who are convicted of civilian offenses that carry one or more years of confinement. While this discharge proceeding was pending, the Army began processing Rucker's elimination from the Army under Chapter 14 of AR 635–200, which provides for, *inter alia,* the voiding of an enlistment obtained fraudulently. Rucker was notified January 18, 1975, that the Army had voided his enlistment for fraudulent entry due to Rucker's enlistment under an assumed name and failure to reveal his prior service. The Army did not give Rucker an opportunity to submit statements prior to his elimination proceedings nor did it afford Rucker an opportunity to consult with counsel before it voided Rucker's enlistment.

On November 18, 1977, Rucker filed a petition with the Army Board of Correction of Military Records (ABCMR) requesting a change in his military records to reflect service during his second enlistment under his true name, credit for time served, and a discharge under honorable conditions. The ABCMR, which was established under 10 U.S.C. § 1552 (1956) to allow the Secretary of the Army to correct military records "when he considers it necessary to correct an error or remove an injustice," denied Rucker's request on May 3, 1978, finding no material error. The ABCMR went on to conclude that if Rucker's enlistment had not been voided he would have been discharged based on his civil conviction.[5]

---

**2.** At the time of Rucker's separation from the Army there were five types of discharge certificates. In descending order of quality of service they are: Honorable, General (Under Honorable Conditions), Undesirable (Under other than Honorable Conditions), Bad Conduct, and Dishonorable. Bad conduct and dishonorable discharge may only be adjudged by a court-martial. A "void enlistment" is not technically a "discharge" because the Army does not characterize the quality of the individual's service.

**3.** Rucker alleged that his recruiter informed him that if Rucker entered the Army without revealing the waivable disqualification and he

became "an asset," the Army would waive the disqualification. Record at 53.

**4.** A military detainer is written notification to civil authorities that a person in their custody is a member of the Army and that military authorities desire to take custody of the individual after his release from civil custody. AR 635–206, ¶ 3h.

**5.** Decisions of the ABCMR will not be disturbed unless the decision was "arbitrary, capricious, unsupported by evidence, or contrary to the laws and regulations." *Nolen v. Rumsfeld,* 535 F.2d 888, 889 (5th Cir.1976), *cert.*

Rucker filed this action in the district court requesting correction of his records, back pay, and a writ of mandamus directing the Secretary of the Army to issue him an honorable discharge. In the court below Rucker argued that the Army had failed to follow its own regulations in voiding his enlistment by failing to provide him with counsel for consultation, an opportunity to submit statements on his behalf, and a medical evaluation prior to the elimination proceedings. He also argued he was deprived of "liberty" and "property" without procedural due process. The district court concluded that in an AR 635–200 proceeding counsel for consultation and a medical evaluation is dependent upon an individual being under military control and therefore, since Rucker was AWOL and absent from military control during the elimination proceedings, the Army had not violated its regulations. The court also concluded Rucker did not have either a protected property or liberty interest which was adversely affected by the Army's actions and therefore granted summary judgment in favor of the Secretary of the Army. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1361 (1977). *Woodard v. Marsh,* 658 F.2d 989, 992 (5th Cir.1981).

## II. DISCUSSION:

A. *Reviewability.* Rucker contends the procedures employed to eliminate him from the military were constitutionally defective and in violation of applicable Army regulations. The Army argues, however, that Rucker's claim is not subject to judicial review because Rucker's separation from the Army is a nonreviewable military decision.[6] The Army argues that its decision to void Rucker's enlistment for fraudulent en-

try rather than issue him a discharge[7] based upon his civil conviction and confinement is a discretionary internal matter and therefore not subject to judicial review. We disagree with the Army's characterization of Rucker's complaint and conclude a portion of Rucker's claim is reviewable.

■ Rucker's challenge to the termination of his enlistment "implicates judicial concern over inappropriate intrusion" into military matters. *NeSmith v. Fulton,* 615 F.2d 196, 201 (5th Cir.1980). Such concern has led courts to decline review of military matters although the courts generally have jurisdiction of matters concerning military personnel decisions. *See, e.g., Woodard v. Marsh,* 658 F.2d at 992. This "judicial trepidation" has stemmed from the concern that such review "might stultify the military in the performance of its vital mission." *Mindes v. Seaman,* 453 F.2d 197, 199 (5th Cir.1971). In an attempt to accommodate the competing interests of non-interference with internal military decisions and the protection of individual rights, this court's predecessor in *Mindes v. Seaman, supra,*[8] established a two-step test to determine whether internal military matters may be reviewed. The first step requires the court contemplating review to determine whether the plaintiff has alleged that the military acted contrary to the Constitution, applicable statutes, or its own regulations and whether the plaintiff has exhausted his administrative remedies. *Id.* at 201. Once that determination is made, the court must then balance the substance of the allegations against the policy reasons that militate against review based on four factors:

1. the nature and strength of the plaintiff's challenge to the military function; and

denied, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1976) (citations omitted). Because the ABCMR did not pass on the claimed violations of Army regulations we are free to review its actions.

6. The district court did not address this issue in its order. However, we are free to resolve the issue since this case was before the court on motion for summary judgment. *West v. Brown,* 558 F.2d 757, 759 (5th Cir.1977), *cert.*

denied, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978).

7. See n. 2 supra.

8. The Eleventh Circuit, in the *en banc* decision of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), adopted as precedent the decisions of the Former Fifth Circuit decided prior to October 1, 1981.

2. The potential injury to the plaintiff if review were denied;

3. the type and degree of anticipated interference with the military function; and

4. the extent to which the exercise of military expertise or discretion is involved.

*Id.* at 201–02. *See NeSmith v. Fulton,* 615 F.2d at 201; *Johnson v. Reed,* 609 F.2d 784, 788–89 (5th Cir.1980); *West v. Brown,* 558 F.2d 757, 759 (5th Cir.1977), *cert. denied* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978).

 It is clear that the first prong of this test has been met. Rucker has exhausted his administrative remedies by petitioning to the ABCMR requesting the relief sought in this action and receiving an adverse determination. Rucker has alleged that the Army has violated its regulations by not affording him consulting counsel, a medical status evaluation, and an opportunity to submit statements at the outset of his elimination proceedings. Rucker has also challenged these proceedings on procedural due process grounds. It has been intimated that such allegations obviate the need for weighing the four factors of the second prong of the test. *See, e.g., Woodard v. Marsh,* 658 F.2d at 992 ("It is well established that, despite *Mindes'* doctrine of 'non-reviewability,' claims that the Army failed to follow its own regulations or failed to afford procedural due process are reviewable." (citations omitted)). Despite such "loose statements" that might end our inquiry at this juncture, *See West v. Brown,* 558 F.2d at 759, the correct approach is to proceed to the second step in the *Mindes* analysis.

In order to assess Rucker's claim under *Mindes* it is necessary to discuss the general procedure employed for processing fraudulent entry cases. Chapter 14 of AR 635–200, which prescribes the procedures for processing fraudulent entry cases, provides that the unit commander of the individual subject to the provisions of AR 635–200 initiate action to substantiate the fraudulent entry. AR 635–200, ¶ 14–6. Once sub-stantiation is obtained, the unit commander forwards a letter to the commander exercising general court-martial jurisdiction containing, *inter alia,* a recommendation for the individual's retention or discharge. *Id.,* ¶ 14–11. If discharge is recommended, the unit commander should direct that the individual, if under military control, be referred for a medical status evaluation. *Id.,* ¶ 14–7. If the individual does not meet the retention medical standard, the individual may either be retained under medical jurisdiction and processed accordingly or the separation proceeding continues, depending upon whether the failure to meet retention standards is not a substantial contributing cause of the individual's misconduct. *Id.,* ¶¶ 14–8a, 14–8b. If the individual meets retention standards, the commander exercising general court-martial jurisdiction determines whether the fraudulent entry is verified or needs further substantiation. *Id.,* ¶ 14–12. If verified, this authority has numerous alternatives. He may direct a discharge with an honorable or general discharge certificate, discharge with an undesirable discharge certificate provided the individual has waived his right to present his case to a board of officers under AR 635–200, ¶ 14–13, or direct that a board of officers be convened which will then recommend discharge or retention. *Id.,* ¶ 14–12a, b, d. This authority may also direct retention if the fraudulent entry consisted of concealing a waivable disqualification, recommend retention if the concealment was of a nonwaivable disqualification, or direct that the fraudulent entry be voided provided the individual is in the status of unauthorized absence or desertion or absent in the hands of civil authorities. *Id.,* ¶¶ 14–12e, f, g.

The Army characterizes Rucker's claim as a challenge to its decision to eliminate Rucker from the Army pursuant to the procedures outlined above rather than pursuant to AR 635–206, which provides for undesirable discharges of soldiers who are convicted of civilian offenses. The Army, however, mischaracterizes Rucker's challenge. The gravamen of Rucker's com-

plaint is not that there was an erroneous decision in the final stages of his elimination proceedings, but rather that certain ministerial duties were not performed at the outset of these proceedings. Specifically, Rucker argues that his unit commander failed to refer him for a medical status evaluation, solicit statements from Rucker concerning his fraudulent enlistment, and appoint him consulting counsel prior to referring the matter to the general court-martial authorities.

■ Each of these claims is peculiarly appropriate for judicial review. First, Rucker's claim is not tenuous. Whether Rucker was entitled to these procedural protections depends upon the proper interpretation of applicable Army regulations. The Army argues that the duty to accord these protections is limited to cases where discharge is recommended. The regulations are not so straightforward. Rucker presents a cogent argument that, by definition, the right to counsel and the concomitant right to the preparation and presentation of evidence apply to "any elimination proceedings" under Chapter 14 of AR 635–200. *See Id.,* ¶ 1–3c. Similarly, paragraph 14–8, which provides for medical processing after the unit commander directs a medical evaluation be conducted, applies to individuals being considered for elimination. Thus, Rucker would have this court determine whether he was entitled to certain rights under applicable regulations and to make this determination we would have to go no further than the regulations. This is within the role of the courts envisioned by *Mindes.* Second, the language of the regulations regarding the actions of the military authorities is mandatory rather than permissive; military expertise and discretion are not involved. *See, e.g.,* AR 635–200, ¶ 14–6 ("the unit commander will . . ."). Rights created by Army regulations must be afforded by the appropriate military authorities. *Mindes v. Seaman, supra; Silverthorne v. Laird,* 460 F.2d 1175 (5th Cir. 1972). Third, interference with the conduct of military affairs in the instant case is

minimal. The Army, under its interpretation of AR 635–200, must afford these procedural rights whenever it employs six of the seven dispositions available for fraudulent enlistees under paragraph 14–12. An order directing that persons subject to the seventh disposition, i.e., voidance of enlistment, be provided these rights will only minimally interfere with the military, particularly when the characterization of the person's service, and therefore the determination of his entitlement to rights, does not occur until the termination of the proceeding. Finally, the harm that flows to the plaintiff includes stigmatization through a less than optimum discharge certificate, loss of credit for time served, and the reduction or elimination of veterans benefits.

Judicial review of the ultimate disposition in Rucker's case, i.e., discharge, retention, or voidance, is not available, however. As outlined above, the general court-martial authority as well as the unit commander may invoke numerous alternatives under Chapter 14. Ultimately, however, the decision regarding retention, discharge, or voidance is discretionary with the appropriate military authorities. *See Id.,* ¶ 1–14 (Individual's entire military record and the quality of his service may be relevant to the decision of retention, separation, or suspension of an individual processed under AR 635–200). While we may order the Army to afford Rucker his rights created by AR 635–200 and to exercise due consideration once these rights are afforded, we may not order the Army to exercise its discretion one way or the other. *Silverthorne v. Laird,* 460 F.2d at 1187. *See also Woodard v. Marsh,* 658 F.2d at 994 (Army does not have to satisfy a federal court with a "rational basis" for its decision to retain one officer over another); *Johnson v. Reed,* 609 F.2d at 789 (Federal court will not interfere with discretionary rating of officer's performance).[9]

■ *B. Merits:* Rucker argues the Army failed to follow its regulations in three respects: (1) the unit commander did

---

**9.** Because of our disposition in this case we do not address the constitutional claims.

not appoint consulting counsel at the outset of his elimination proceedings; (2) the Army did not afford Rucker an opportunity to submit statements for consideration by the general court-martial authority; and (3) the unit commander did not refer Rucker for a medical status evaluation. The district court held that Rucker had waived these rights by being absent from military control while in civil custody during the elimination proceedings. The Army concedes that the district court's interpretation of the regulations is incorrect but argues that Rucker's claim lacks merit under the correct interpretation. Brief of Appellee at 28 n. 16. Because this case was before the district court on cross motions for summary judgment, remand on this issue is unnecessary. *See Collins v. Seaboard Coastline Railroad Company,* 681 F.2d 1333, 1335 (11th Cir.1982). We turn to each of the allegations.

Army Reg. No. 635–200, ¶ 14–6a provides that the unit commander will—

(1) Initiate action to obtain the appointment of appointed counsel for consultation.

(2) Initiate action to obtain substantial evidence as required.

(3) Request a medical evaluation.

Appointed counsel for consultation is defined as "counsel appointed to consult with and advise, at the outset of *any elimination proceedings,* an individual being processed for separation under the provisions of . . . Chapter 14 of this regulation." (emphasis added) *Id.,* ¶ 1–3c. Appointed counsel advises the individual concerning the basis of his separation and its effects, the rights available to him, and the effect of waiving any such rights. *Id.* Counsel also advises the individual regarding the merits of the contemplated action and assists him in preparing statements and other evidence. *Id.,* ¶ 14–9. If an undesirable discharge is contemplated, counsel must inform the individual that he has the right to submit statements, present his case, and consult with counsel. *Id.,* ¶ 1–10.

The Army argues that under these regulations the role of appointed counsel is to render the "legal advice" required by the regulations relating to discharge cases and, because discharge was not effected in this case, consulting counsel was unnecessary. We disagree. As noted above, counsel for consultation is not restricted to discharge cases but applies to any elimination and separation proceeding brought under Chapter 14. "Separation" is a general term covering the panoply of releases under Chapter 14. *Id.,* ¶ 1–31. The role of consulting counsel is also not limited to rights advisement. Counsel must also advise the basis, effect, and merits of the separation as well as assist the individual in the preparation of statements and evidence for consideration by the court-martial authority. *Id.,* ¶¶ 1–3c, 14–9. Furthermore, the role of counsel is not limited by the language of paragraph 1–10, which accords rights to individuals subject to undesirable discharges. Those rights supplement those generally accorded individuals subject to Chapter 14 proceedings. *Id.,* ¶ 14–9. Similarly paragraph 14–9, which generally provides for the rights of individuals, does not limit those rights to discharge actions. That paragraph incorporates by reference the role of counsel under paragraph 1–3c which, as discussed above, provides for the right to be advised of the basis and effect of the separation action. Paragraph 14–9 also independently provides for assistance in preparation of statements and other evidence. Therefore, we conclude Rucker was entitled to counsel for consultation.

Rucker also alleges he has the right to submit statements in a Chapter 14 proceeding. He argues that such a right is not specifically granted by AR 635–200, but that it arises by necessary implication from certain duties imposed by this regulation. We agree. Consulting counsel, as discussed above, may assist an individual in preparing any statements for consideration by the court-martial authority. By necessary implication, therefore, Rucker has the right to prepare statements with consulting counsel. Similarly, the unit commander has a duty to forward these statements to the court-martial authority before any further action

may be taken. *Id.,* 14–11. These concurrent duties imply a right to submit statements on behalf of all individuals subject to a Chapter 14 proceeding.[10]

Rucker contends he was also entitled to a medical status evaluation. The district court concluded that the right to a medical evaluation is predicated upon the individual being under military control. We agree. Although the unit commander is required to request a medical evaluation, AR 635–200, ¶ 14–6a(3), the regulations provide for disposition through medical channels only in cases where the individual is "under military control." *Id.,* 14–7. Because Rucker was in civilian confinement at the time of his elimination proceedings he was not entitled to a medical evaluation.

## III. CONCLUSION:

For the above stated reasons, we conclude that Rucker's claim that the Army violated its regulations by not providing counsel for consultation, affording an opportunity to submit statements, and not conducting a medical evaluation are reviewable. We also conclude the district court incorrectly determined that Rucker was not entitled to consulting counsel and an opportunity to submit statements at the outset of his elimination proceedings. Rucker, however, was not entitled to a medical evaluation. Therefore, further proceedings are necessary to determine the appropriate relief.[11]

The award of summary judgment in favor of the Secretary of the Army is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings not inconsistent with this opinion.

---

**10.** These statements are particularly appropriate when the fraudulent entry consisted of concealing a waivable disqualification and therefore retention is available under AR 635–200, ¶ 14–12e. Those officials charged with making the determination whether to return an individual may consider the individual's entire military record and any other material factors. *Id.,* ¶ 1–14. One such factor pertinent here is the allegation that recruiter misconduct induced the enlistment. *See* n. 3 *supra.* Deliberate failure of a recruiter to seek and secure a waiver required by Army regulations does not result in loss of military jurisdiction over the enlistee. *See, e.g., United States v. Stone,* 8 M.J. 140, 141 (C.M.A.1979).

---

**11.** Although we do not give specific instructions regarding relief, we note that Rucker may not be entitled to back pay or subject to a less favorable separation classification. *See Carter v. United States,* 509 F.2d 1150 (Ct.Cl.1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976), *reh. denied,* 424 U.S. 950, 96 S.Ct. 1423, 47 L.Ed.2d 356 (1976); *Doyle v. United States,* 599 F.2d 984, 220 Ct.Cl. 285 (Ct.Cl.1980); amended *In re Doyle,* 609 F.2d 990, 220 Ct.Cl. 326 (Ct.Cl.1980), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980) (10 U.S.C. § 1552 confers the power to correct records in favor of a serviceman and never against him.